(8)   With respect to the Assets set forth in Schedule 22.a.(x)(1), to the best knowledge of Seller and Vintage, no third party claims or demands have been made during the period between the date of this Contract and Closing relating to whether the associated leases were in full force and effect in accordance with their respective terms, or whether the related material Applicable Contracts are in full force and effect or whether any third party is in default thereunder in any material respect. To the best knowledge of Seller and Vintage, (i) Seller is in substantial compliance with the associated Leases regarding the payment of royalties, (ii) Seller is not in default in the performance of any obligation on the part of Seller thereunder which could reasonably be expected to result in termination or cancellation thereof, and (iii) no third party claims or demands related to (i) and (ii) above have been made during the period between the date of this Contract and Closing.

b.   Buyer's Representations.  Buyer represents and warrants that:

(i)   Buyer: (a) is a corporation duly organized, validly existing and in good standing under the laws of Colorado, (b) is duly qualified to transact business California and in each jurisdiction where the nature and extent of its business and properties require the same in order for it to perform its obligations under this Contract; and (c) possesses all requisite authority and power to conduct its business and execute, deliver and comply with the terms and provisions of this Contract and to perform all of its obligations hereunder; and at Closing, Buyer shall be authorized to own and operate the Properties under the laws and regulations of California.

(ii)   This Contract and the Transaction have been duly authorized by Buyer and do not conflict with the provisions of any by-law or other document under which Buyer is organized.

(iii)   This Contract has been duly executed and delivered by Buyer and constitutes the valid and binding obligation of Buyer, enforceable against it in accordance with its terms except as such enforceability may be limited by bankruptcy, insolvency or other laws relating to or affecting the enforcement of creditors' rights generally and general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

(iv)   Buyer has incurred no liability, contingent or otherwise, for brokers' or finders' fees relating to the Transaction for which Seller shall have any responsibility whatsoever.

(v)   Buyer is knowledgeable, competent, and experienced in the oil and gas industry and has independently evaluated and interpreted the technical data and other information regarding the Assets prior to entering into this Contract, understands and is financially able to bear the risk associated with ownership of the Assets, and will



independently conduct all the due diligence investigations and reviews of all matters concerning the Assets as it deems necessary prior to Closing. Buyer acknowledges that Buyer is not relying upon any statement or representations made by Seller concerning the present or future value of, or anticipated income, costs, or profits, if any, to be derived from the Assets and other than Seller's representations and warranties provided in this Contract, Buyer has relied solely upon its independent inspections, estimates, computations, evaluations, reports, studies, knowledge and other information regarding the Assets.

(vi)    Buyer is not buying the Assets for resale in any manner that would subject the transaction to requirements for registration under applicable securities laws.

c.    Seller's representations under this Paragraph 22 shall survive three (3) years after Closing.

23.    Operation of the Assets Prior to Closing:    From the date hereof until Closing, Seller, if within Seller's reasonable power to do so: (1) shall not abandon any well capable of commercial production, or release or abandon all or any part of its interest in the Assets without Buyer's prior written consent; (2) shall cause the Assets to be developed, maintained or operated in a manner materially consistent with prior operations; (3) shall not commence or agree to participate in any operation on the Assets anticipated to be conducted after Closing and to cost in excess of twenty five thousand dollars ($25,000) per operation net to Buyer's interest without Buyer's prior written consent; (4) shall not create any lien, security interest or other encumbrance with respect to their interest in the Assets or enter into any agreement for the sale, disposition or encumbrance of any of their interest in the Assets, or dedicate, sell, encumber or, without notifying Buyer, dispose of any oil and gas production, except in the ordinary course of business on a contract which is terminable on not more than thirty (30) days notice; (5) shall maintain in force all insurance policies covering their interest in the Assets; (6) shall maintain all agreements comprising or affecting the Assets in full force and effect and comply with all express or implied covenants contained therein; (7) shall pay or cause to be paid all material costs and expenses incurred in connection with their interest in the Assets before the earlier of forty-five (45) days from receipt or the date on which they became delinquent; and (8) shall maintain in all material respects the Assets taken as a whole in good and effective operating condition.

24.    Covenant Not to Sue and Alternative Dispute Resolution:

This Paragraph applies to any dispute between the parties and their affiliates, arising at any time, related to the Assets or this Contract, including whether there is a contract between the parties.



27

Any claim or controversy related to the Assets or this Contract of whatever nature, including an action in tort or contract or a statutory action ("Disputed Claim"), or the arbitrability of a Disputed Claim, will be resolved under the terms, conditions, and procedures of this Paragraph and will be binding on both parties and their respective affiliates, successors and assigns. Neither party nor their affiliates may prosecute or commence any suit or action against the other party relating to any matters that are subject to the Paragraph.

A claim filed by a third party against the Buyer or Seller or their affiliates will be subject to this Paragraph. If Buyer has notified Seller before Closing of a Disputed Claim by Buyer before Closing and the Disputed Claim in not resolved prior to Closing, the Disputed Claim will not be subject to this Paragraph unless agreed to by the parties.

Disputed Claims covered by this Paragraph shall be governed by the following procedure to resolve such dispute:

(i). A meeting shall be held promptly between the parties, attended by individuals with decision-making authority regarding the dispute, to attempt in good faith to negotiate a resolution of the dispute.

(ii). If, within thirty (30) days after such meeting, the parties have not succeeded in negotiating a resolution of the dispute, the parties shall submit the dispute to mediation in accordance with the Commercial Mediation Rules of the American Arbitration Association. The parties shall bear equally the costs of the mediation.

(iii). The parties will jointly appoint a mutually acceptable mediator, seeking assistance in such regard from the American Arbitration Association if they have been unable to agree upon such appointment within twenty (20) days from the conclusion of the negotiation period.

(iv). The parties shall participate in good faith in the mediation and negotiations related thereto for a period of thirty (30) days. If the parties are not successful in resolving the dispute through mediation, then the parties shall settle the dispute through binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The place of arbitration shall be Los Angeles, California. The arbitrator(s) are not empowered to award damages in excess of actual damages, such as, but not limited to punitive damages.



### BINDING ARBITRATION

NOTICE: BY INITIALING IN THE SPACE PROVIDED BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDING THE "ALTERNATIVE DISPUTE RESOLUTION" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALLING IN THE SPACE PROVIDED BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ALTERNATIVE DISPUTE RESOLUTION" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ALTERNATIVE DISPUTE RESOLUTION" PROVISON TO NEUTRAL ARBITRATION.

SELLER _____ BUYER _____

25.    Miscellaneous:

25.1. Force Majeure: In the event all or part of the Assets, including fixtures and improvements, is damaged or destroyed by fire or other calamity prior to Closing, Seller shall have the option, but not the obligation, of repairing the damage at its sole cost or deleting the damaged Assets from the proposed sale and determining the value of the property in the manner prescribed in Paragraph 15.e.(ii).

25.2. Preferential Rights and Consents to Assign:

a.    Preferential Rights to Purchase or Rights of First Refusal:
Attached hereto as Exhibit "I" is a list of Properties containing preferential rights to purchase, first rights of refusal or consents to assign from Seller to Buyer (collectively "Consents"). Assets subject to Consents are subject to Buyer obtaining, at Buyer's expense, a waiver of such right or expiration of the appropriate time period for asserting such right without any exercise thereof prior to Closing. Seller shall not be liable to Buyer by reason of inability or failure to obtain any waiver of Consents. Seller shall give reasonable cooperation to Buyer in obtaining

such Consents, including sending the first requests, but other than as specified elsewhere in this Contract Seller shall not be liable to Buyer if Consents are not obtained.    Within three (3) business days of the execution of this Contract, Seller shall use its best efforts to (1) notify the holders of the Consent that it intends to transfer the Assets to Buyer, (2) provide them with any information about the transfer of the Assets to which they are contractually entitled, and (3) ask the holders of the Consents to consent to or waive the preferential right of purchase of the assignment of the affected Assets to Buyer, and (4) provide to Buyer copies of Seller's notification to the holders within five (5) business days.    Seller shall promptly notify Buyer when any preferential rights are exercised, waived or deemed waived, any Consents are given, denied or the requisite time periods have elapsed without any rights being exercised or Consent being received.

b.    In the event Buyer elects to waive its rights to terminate this agreement pursuant to Paragraph 12 and Close without first having obtained all such Consents, BUYER AGREES TO AND SHALL PROTECT, DEFEND, INDEMNIFY, SAVE, HOLD HARMLESS, DISCHARGE AND RELEASE SELLER AND VINTAGE FROM AND AGAINST ANY AND ALL DEMANDS, CLAIMS, SUITS, OR CAUSES OF ACTION (INCLUDING, BUT NOT LIMITED TO ANY JUDGMENTS, LOSSES, LIABILITIES, EXPENSES, INTEREST, LEGAL FEES, AND DAMAGES, WHETHER IN LAW OR EQUITY, WHETHER GENERAL, SPECIAL, PENAL, STAUTORY, OR CONSEQUENTIAL, AND WHETHER IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATED TO THE ASSIGNMENT OF THE ESCROW PROPERTIES ASSIGNED WITHOUT CONSENT.

25.3. Fees, Costs and Expenses:    Except as otherwise provided herein, all fees, costs and expenses incurred by Seller or Buyer relating to this Contract shall be paid by the party incurring the same.

25.4. Notices:    All notices and consents to be given hereunder shall be in writing and shall be deemed to have been duly given if delivered personally, telexed with receipt acknowledged, mailed by registered mail, postage prepaid, or delivered by a recognized commercial courier to the party at the address set forth within this Paragraph 25.4. or such other address as any party shall have designated for itself by ten (10) days' prior written notice to the other party.



Seller
Vintage Petroleum California, Inc.
110 West Seventh Street
Tulsa, Oklahoma 74119
Attn: General Counsel
FAX 918-878-5783

Buyer
Greka SMV, Inc.,
3201 Airpark Drive, Suite 201
Santa Maria, CA 93455
Attn: Randeep S. Grewal
FAX 805-347-1072

25.5. Severability: In the event any covenant, condition, or provision contained herein is held to be invalid by a court of competent jurisdiction, the invalidity of any such covenant, condition or provision shall in no way affect any other covenant, condition or provision contained herein; provided, however, that any such invalidity does not materially prejudice either the Buyer or Seller in its respective rights and obligations contained in the valid covenants, conditions, and provisions of this Contract.

25.6. Construction of Ambiguity:    In the event of any ambiguity in any of the terms or conditions of this Contract, including any exhibits whether or not placed of record, such ambiguity shall not be construed for or against any party hereto on the basis that such party did or did not author the same.

25.7. Audit: Buyer and Seller, for itself and for its directors, partners, employers, and agents warrants, covenants and represents to the other that, except as otherwise expressly provided in this Contract, neither it nor any of its directors, employees, partners or agents has given to or received from the other party, for any of such party's directors, partners, employees or agents any commission, fee, rebate, gift or other thing or service in connection with this Contract, and Buyer and Seller each agree that its books and records shall be subject to reasonable audit by the other as may be required to substantiate compliance with this provision.

25.8. Confidentiality:    Buyer acknowledges that all information furnished or disclosed pursuant hereto must remain confidential. Buyer may disclose such information only to its subsidiaries or affiliates, agents, advisors or representatives (herein "Representatives") who have agreed in writing, prior to being given access to such information, to be bound by the terms of this Contract. An original of the signed agreement(s) of the Representatives will be furnished to Seller upon request. In the event that Closing of the transactions contemplated by this Contract does not occur for any reason, Buyer and its Representatives shall promptly return to Seller or destroy any and all materials and information, including any notes, summaries, compilations, analyses or other material derived from the inspection or evaluation of such material and information, without retaining copies thereof, except for the purposes of any action instituted to enforce the terms of this Contract. Notwithstanding the provisions of Paragraph 25.10., nothing in this Paragraph 25.8. and this Contract shall have the effect of terminating, modifying or superseding any



confidentiality agreement entered into by and between Buyer and Seller in relation to this Contract.

Prior to Closing, without prior consent of the other Party (which consent may not be unreasonably withheld), neither Party may make any public disclosure or issue any press release or other communication regarding the subject matter of this Agreement, whether directly or indirectly. A Party shall have 48 hours exclusive of Saturdays, Sundays and legal holidays, to respond to a proposed disclosure, press release or communication. Notwithstanding the foregoing, a Party may make such disclosures as are required by applicable law or by the rules of a relevant stock exchange, provided however that a Party shall promptly advise the other Parties that such disclosure is so mandated. For purposes of consultation under this section, the following individuals are designated as primary contacts:

| For Seller | For Buyer |
|---|---|
| Bob Phaneuf | Richard A. L'Altrelli |
| Vice President | Director of Corporate Development |
| Corporate Development | 212-218-4680 |
| 918-592-0101 | |

25.9. Time of Performance:    Time is of the essence of this Contract and each and every provision hereof which in time or performance is a factor.

25.10.    Entire Agreement: This Contract constitutes the entire agreement between Seller and Buyer with respect to the subject matter hereof, superseding all prior statements, representations, discussions, agreements and understandings relating to such subject matter. No amendment shall be binding unless in writing and signed by representatives of both parties. Headings used in this Contract are only for convenience of reference and shall not be used to define the meaning of any provision. This Contract is for the benefit of Seller and Buyer only and not for the benefit of third parties.

25.11.    Assignment: Prior to Closing, neither party may assign this Contract to another party, except to an affiliate, without the express written consent of the other party, which consent shall not be unreasonably withheld, and thereafter such assignee will exercise and perform the assigning party's rights and duties under this Contract; provided, however, that the assigning party shall remain responsible to the other party in all respects and will defend, indemnify and hold the other party harmless from any liability, damages or costs including reasonable attorney's fees, that may arise as a result of the assignment.



32

25.12.    Removal of Signs and Markers:    Buyer shall, at its own expense and within 90 days after Closing either: (i) remove or cause to be removed all references to Seller or Vintage (including its name or logo and those of is predecessors) from all lease and well signs and placards which identify or indicate Seller's or Vintage's prior ownership in the Assets and place Buyers name and logo, or those of its designated operator, whichever is applicable thereon, (ii) remove said lease and well signs and placards and erect or install signs and placards as may be required by state or other governmental agencies indicating Buyer or its designated operator, whichever is applicable, as the owner-operator of the Assets and/or property or (iii) any combination of (i) and (ii) above, so long as any reference to the Seller or Vintage is removed from all lease and well signs and placards.

Buyer acknowledges that Seller is relying on Buyer to remove references of Seller and Vintage from all signs and placards. If Buyer fails to comply with this paragraph within thirty (30) days notice of breach by Seller, then Seller shall be entitled to the costs incurred in enforcing this paragraph.

25.13.    Governing Law:    This Contract shall be governed by the law of the State of California without regard to rules concerning conflicts of law.

25.14.    Waiver:    The waiver or failure of either party to enforce any provision of this Contract shall not be construed or operate as a waiver of any further breach of such provision or of any other provision of this Contract.

25.15.    Survival of Agreements: Except    as    otherwise    specifically provided in this Contract, all covenants, agreements, representations, guaranties and warranties shall survive the execution of this Contract, Closing, the delivery and recordation of any deeds, assignments or bill of sales which convey the Assets from Seller to Buyer.

25.16.    Successors and Assigns: This Contract and the provisions herein, which shall survive Closing, shall bind and inure to the benefit and burden of the heirs, successors and assigns of the parties hereto.

25.17.    Recording and Filing:    Buyer shall be solely responsible for recording of the assignments, deeds, and any other document related to the conveyance of the Assets, and shall promptly furnish Seller copies of the recorded originals or with the recording information, dependent upon whether the applicable governmental body returns or retains the recorded originals. Seller shall be responsible for all filings with state and federal agencies for change of operator, and shall promptly provide Buyer with the original approved copies of all such filings, or confirmation thereof. All recording and filing shall be at the sole cost and expense of Buyer and Buyer shall promptly reimburse Seller for all such costs upon presentation of appropriate invoices.



33

25.18 Further Assurances.    Buyer and Seller agree to execute and deliver to the other all division orders, transfer orders and all other documents necessary to fully vest in Buyer the rights, obligations and benefits acquired pursuant to this Contract. If requested by Buyer, Seller and Vintage agree to provide within a reasonable time access to their financial information for the Properties for each of the three years ending December 31, 2000, 1999, and 1998 so that Buyer may perform a look back audit.

25.19 Attorney's Fees and Costs. If any action is instituted to enforce the terms of this Contract, the prevailing party shall be entitled to recover from the losing party all attorney's fees and costs incurred in such action.

26.    Additional Plugging, Abandonment and Remediation Requirements:

a.    Zaca Field:

(i)    Buyer acknowledges that the Assets located in the Zaca Field are subject to that certain Purchase and Sale Agreement by and between Texaco Exploration and Production Inc. and Vintage Petroleum, Inc. dated May 10, 1995 and in particular to the provisions set forth in Sections 2.6 and 4.2(b) contained therein. Pursuant to such Sections, Buyer hereby agrees to plug and abandon all idle wells located in Zaca field, but in any event no less than twenty-four (24) wells, by December 31, 2004. Buyer shall plug no less than four (4) wells in each year prior to 2005. Buyer shall provide Seller with supporting documentation in the form of paid invoices or other similar proof (reasonably acceptable to Seller) of costs actually incurred and governmental approvals upon such abandonments as soon as practical in order that Seller may furnish such to Texaco. Buyer hereby agrees to indemnify, hold harmless and defend Seller and its affiliates from and against all loss, liability, claims, fines, expenses, contractual penalty, costs (including attorney's fees and expenses) and causes of action directly or indirectly caused by or arising out of any breach by Buyer of this provision.

(ii)    Buyer acknowledges the remediation requirements set for in the Surface Lease Agreement dated November 28, 1995 by and between Firestone Farming Company Limited Partnership and Vintage Petroleum, Inc. Buyer hereby agrees to perform the obligation set forth in Paragraph 3.b. of said Lease to remediate the lower sump as described in Exhibit "D" of such Lease no later than September 30, 2001.



34

b.  Cat Canyon, Los Flores, Clark Avenue, Santa Maria Valley Fields:

(i)  Buyer shall be responsible for remediating the two remaining sumps located on the Nicholson lease (4.29 acre production site) in accordance with the October 14, 1997 Letter of Intent by and between Vintage Petroleum, Inc. and O.J. Portwood, LLC.

(ii)  Buyer shall be responsible for completing the remediation requirements set forth in the Arbitration Award in the Ontiveros v. Shell case and remediation of diluent leaks identified as a result of the Work Plan for Characterization of KD Impacted Soil on the California Lease performed by Waterstone Environmental, Inc.

(iii)  Seller has remediated the soil on the Edmonston lease, however, the Santa Barbara County Protection Services Division has not provided written releases to close out the remediation. Buyer shall be responsible for any remaining remediation on the Edmonston lease imposed by the County to close out the project.

(iv)  Buyer shall be responsible for any remediation work required to be done on the soil stockpile located on the United, California, Security and Harberdt properties.

SUBJECT TO BUYER'S RIGHTS UNDER PARAGRAPH 18, BUYER WARRANTS THAT IT HAS REVIEWED THE ESTIMATED COMPLIANCE COSTS REPRESENTED BY THIS PARAGRAPH AND HAS A FULL UNDERSTANDING OF THE WORK TO BE PERFORMED AND THE COST OF COMPLIANCE AND THAT BUYER HAS INCLUDED SUCH COSTS IN THE PURCHASE PRICE. BUYER RECOGNIZES THAT BUYER'S AGREEMENT UNDER THIS PARAGRAPH WAS A MATERIAL INDUCEMENT TO SELLER TO ENTER INTO THIS AGREEMENT. IN ADDITION TO ANY OTHER PROVISION CONTAINED IN THIS AGREEMENT, BUYER FOREVER RELEASES, INDEMNIFIES AND HOLDS HARMLESS SELLER FROM ANY AND ALL COSTS, WHETHER KNOWN OR UNKNOWN, ASSOCIATED WITH ANY OF THE REQUIREMENTS SET FORTH IN THIS PARAGRAPH.

27.  Security for Plugging and Abandonment:    Buyer shall obtain insurance to assure Buyer's performance of its obligations in Paragraph's 20, 21 and 26 relating specifically to the Property conditions and plugging and abandonment obligations. Such insurance shall have policy limits of Ten Million Dollars ($10,000,000) and shall be pre-paid by Seller for a period of five (5) years. Buyer must obtain Seller's approval of the terms of such insurance policy and the company or companies underwriting such prior to Closing. Seller shall be named an additional insured in such insurance, which shall be primary to any insurance of Seller that may apply. No "other insurance" provision shall be applicable to Seller and its affiliates, subsidiaries and/or interrelated companies, by virtue of having been named as



35

additional insured or loss payee under any policy of insurance. Buyer shall obtain from its insurer(s) a waiver of subrogation against Seller in the insurance policy set forth in this Paragraph 27. If the Parties are unable to agree on the terms of insurance, either Party shall have the option to terminate this Contract without any liability to the other party

28.   Casualty Losses: If, prior to Closing Date, any facility or equipment included within the Assets to be transferred by Seller is damaged or destroyed by fire, flood, storm or other casualty (hereinafter called "Casualty Loss"), Seller shall notify Buyer immediately. If such Casualty Loss in Buyer's reasonable opinion is greater than five percent (5%) of the Purchase Price, excluding any insurance proceeds, Buyer shall be entitled to an adjustment in the Purchase Price. If the Casualty Loss in Buyer's reasonable opinion is greater than fifteen percent (15%) of the Purchase Price, both parties shall have the option to terminate this Contract without any liability to the other party. If Closing occurs, Buyer shall receive any insurance proceeds payable to Seller with respect to such Casualty Loss.

IN WITNESS WHEREOF the undersigned parties to this Contract have executed it as of the day and year first mentioned above.

BUYER                                              SELLER

GREKA SMV, INC.                          VINTAGE PETROLEUM CALIFORNIA, INC.

By:_____        By:_____
Randeep S. Grewal                         Robert W. Cox
Chairman, CEO and President        Vice President

36

# EXHIBIT "2"

**AIG** AMERICAN INTERNATIONAL COMPANIES®

Name of Insurance Company to which application is made

## CLEANUP COST CAP INSURANCE APPLICATION

### THIS IS AN APPLICATION FOR A CLAIMS MADE POLICY

**INSTRUCTIONS**

1. Please complete this application. All questions must be answered.

2. If space is insufficient to complete answers, please continue on your firm's letterhead.

3. Have this form signed and dated by an owner, partner, director or officer of your firm.

4. In addition to all information requested in this application, please provide most recent audited financial statements.

### GENERAL INFORMATION

1. Named Insured ("applicant")  Greka Energy

   Contact Person/Title  Thomas G. Dahlgren E+S Manager

   Post Office Address  P O Box 6209

   Santa Maria  CA  93456

   Telephone #  (805) 347-1700 x 301  Fax #  (805) 347-1072

   Site Location ("property")  Santa Maria Valley  Cat Canyon  Zaca  Gilfields

2. Named Insured is a:

   ___ partnership  ✓ corporation  ___ joint venture  ___ other _____

3. If the applicant is not the current property owner, please identify the applicant's relationship to the property.

   Combination of fee properties and oil & gas operator of leased mineral rights

4. What is the proposed future use of the property?

   Oil & Gas Production Operations

5. Is the applicant the sole party responsible or potentially responsible for the environmental remediation of the property? Yes ✓ No ___ If not, please attach a list of all other known and suspected responsible parties, and, if available, the percentage of responsibility allocated to each party.

### PROJECT DESCRIPTION

6. Project description-  Attach a detailed proposed remediation plan for the property.

7.    Plans and Drawings-    Attach a copy of all applicable site, construction, utility and geophysical plans.

8a.    List of Contractors-    Indicate which contractors will be providing services for the proposed remediation project.

Consulting Engineers/Architects  WALSH GEOSCIENCE

Project Management  In-House

Engineering Design  In-House

Cost analysis  In-House

Geophysical surveys  Not Applicable

Health and Safety  In-House

Laboratory  Zymax Labs San Luis Obispo CA

Drilling/well installation  S/G Testing Lompoc CA

Excavation  Randolph Construction EDS Construction

Demolition  Same

Site decontamination  Walsh Geoscience Randolph Construction

Water treatment  Same

Groundwater treatment  Same

Air emissions control  VIZI Environmental /In-House

Soil vapor extraction  Walsh & VIZI

Mobile Treatment  Not Applicable

Barriers, Liners  Walsh Randolph

Tank removal  Randolph

Transportation  Sposos Trucking

PCB removal  Not App

Pipeline cleaning  Not App

Dredging  Not App

Sewer/septic  Not App

Plumbing  Not App

Electrical  Not App

Site work  Randolph Construction

Security  In-House

Building construction  Not App

Materials suppliers    *Not Applicable*

Utilities    *Not Applicable*

Other (specify)_____

8b.    For each contractor listed above, provide or attach the following information (where applicable):

- Scope of work
- Cost estimate
- Qualifications package
- Resumes of key personnel
- Hazardous training manuals and certifications
- List of professional liability, pollution liability and general liability claims and suits against each contractor

- QA/QC plans
- Project communication plan
- Copies of performance and payment bonds
- Corporate safety procedures
- Warranties, certifications and service agreements
- Current certificates of insurance from each contractor for general liability, professional liability, pollution liability and builders risk

8c.    Provide a complete copy of the contract between the remediation contractor for the proposed remediation project, and the applicant.

9a.    Will an owner's representative or project manager be hired independently to represent the owners interest at the remediation project?    Yes____ No _✓_  If yes, provide details.

9b.    How are disputes settled between parties performing the remediation and the party representing the owner's interest?

*We have avoided disputes by direct & constant management of all projects by Gerra personnel*

10.    Attach a description of any petroleum or hazardous materials to be used at the remediation project site. Identify the quantity of material to be stored at any one time, method of storage and location.  *None*

11.    What off-site locations are proposed for disposal, treatment or storage activities?

*None*

12.    What cleanup standards will apply to this project?

*Santa Barbara County approves all environmental work plans and sets all clean-up standards*

13.    Does the remediation plan anticipate contaminated materials, soil, or water remaining on site which are above regulatory action levels? If so, please describe.

*No*

# ENVIRONMENTAL SCHEDULE

| PROPERTY | 2001-2002 ACTIVITY | COST | 2002-2003 ACTIVITY | COST | 2003-2004 ACTIVITY | COST | 2004-2005 ACTIVITY | COST | 2005-2006 ACTIVITY | COST | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BRADLEY | | | | | | | | | | | |
| PORTER | | | | | | | | | | | |
| GOODWIN | | | | | | | | | | | |
| GOODWIN "A" | | | | | | | | | | | |
| MORTENSON | PILE REMEDIATION | $ 25,000.00 | PILE REMEDIATION | $ 25,000.00 | | | | | | | $ 50,000.00 |
| HARBORDT | PILE REMEDIATION | $ 25,000.00 | PILE REMEDIATION | $ 25,000.00 | | | | | | | $ 50,000.00 |
| UCAL | KD SPILL CLEAN UP | $ 50,000.00 | KD SPILL CLEAN UP | $ 50,000.00 | KD SPILL CLEAN UP | $ 50,000.00 | KD SPILL CLEAN UP | $ 50,000.00 | KD SPILL CLEAN UP | $ 50,000.00 | $ 250,000.00 |
| CALIFORNIA | PILE REMEDIATION | $ 25,000.00 | PILE REMEDIATION | $ 25,000.00 | | | | | | | $ 50,000.00 |
| SECURITY | | | | | | | | | | | |
| THOMAS | | | | | | | | | | | |
| LLOYD | | | | | | | | | | | |
| ACQUISTAPACE | | | | | | | | | | | |
| GOLCO | | | | | | | | | | | |
| LAKEVIEW | | | | | | | | | | | |
| NICHOLSON | SUMP CLEAN UP | $ 30,000.00 | | | | | | | | | $ 30,000.00 |
| BRADLEY | | | | | | | | | | | |
| EAST VALLEY | | | | | | | | | | | |
| KEMP | | | | | | | | | | | |
| KEMP "A" | | | | | | | | | | | |
| BRADLEY | | | | | | | | | | | |
| LOS FLORES | | | | | | | | | | | |
| ZACA | ABANDON 4 WELLS | $ 40,000.00 | ABANDON 4 WELLS | $ 40,000.00 | ABANDON 4 WELLS | $ 40,000.00 | ABANDON 2 WELLS | $ 20,000.00 | | | $ 140,000.00 |
| TOTALS | | $ 195,000.00 | | $ 165,000.00 | | $ 90,000.00 | | $ 70,000.00 | | $ 60,000.00 | $ 570,000.00 |

SOIL PILE CLEAN UP PROGRAM ON UCAL, SECURITY, & HARBORDT:

DEDICATION OF $8250.00 PER MONTH TO REMEDIATION AND GRADING OF STOCKPILED MATERIAL OVER TWO YEAR PERIOD

CALIFORNIA LEASE KD SPILL PROGRAM:

DEDICATION OF $50,000 ANNUALLY TOWARDS ADDRESSING ONE OR MORE KD SPILL LOCATIONS EACH YEAR, MOST OF WHICH ARE SMALL NEAR-SURFACE EXCAVATIONS AND REMEDIATION PROJECTS

NICHOLSON SUMP REMOVAL PROGRAM:

ALREADY ASSESSED & PARTIALLY CLEANED UP BY LANDOWNER, BALANCE OF WORK ESTIMATED AS ONE TIME EXPENSE OF APROXIMATELY $30,000.00

ZACA FIELD WELL ABANDONMENT PROGRAM:

AGREEMENT TO ABANDON 4 WELLS PER YEAR THROUGH THE YEAR 2004.

CAL, UCAL, SECURITY, & HARBORDT PROGRAMS TO BE MANAGED & BUDGETED IDENTICALLY TO GREKA'S ENVIRONMENTALLY PRO-ACTIVE FULLERTON FEE BIO-VENTING & REMEDIATION CLEAN UP PROGRAM.

# CLEANUP COST CAP INSURANCE APPLICATION

**RESPONSE TO QUESTION 8B**

1. **SOIL PILE CLEANUP PROGRAM ON UCAL, SECURITY, HARBORDT PROPERTIES**

   *SCOPE OF WORK:*
   Continue to till and wet-down piles of impacted soil for bio-remediation. The bio-remediation of the piles is already 90% complete. Following the completion of the remediation process, some of the piles will need to be either graded out onsite over a larger area and seeded for soil stability or moved to areas where the soil can be spread out and seeded.

   *COST ESTIMATE:*
   See attached environmental schedule

   *QUALIFICATIONS PACKAGE:*

   CAROLYN WALSH (WALSCH GEOSCIENCES) is a registered geologist and cal epa registered environmental assessor

   RANDOLPH CONSTRUCTION is a licensed contractor with all personnel 40-hour haz/whopper certified.

   Neither contractor has had any claims or suits filed against them. Both contractors work by verbal approvals only, based on pre-set hourly rate schedules for equipment and manpower.

2. **CALIFORNIA LEASE KD SPILL PROGRAM**

   *SCOPE OR WORK:*

   General cleanup of california property from small pipeline leaks of kd (diluent) of 1 inch pipeline system to numberous oil wells. Actual extent of work at each spill site will be determined by initial excavation or borehole testing program
   This will be a continuous monthly allocated expense program until all potential soil impacts have been addressed.

   *COST ESTIMATE:*

   See attached environmental schedule

   *QUALIFICATION PACKAGE:*

   Same as paragraph one.

3. **NICHOLSON SUMP REMOVAL PROGRAM:**

   *SCOPE OF WORK:*

   Excavation of buried oil sump and bio-remediation of sump material on the nicholson property. All of the assessment work is completed and two sumps have already been cleaned up. The remaining work is being done by a contractor under hire by the landowners. Work has already commenced on the final sump clean up. This is a one-time expense item during the 2001-2002 year.

4. **ZACA FIELD WELL ABANDONMENT PROGRAM:**

   *SCOPE OF WORK:*

   Down-hole abandonment of 4 wells per year through 2005.

   *COST ESTIMATE:*

   See attached environmental schedule

   *QUALIFICATIONS PACKAGE:*

   All work will be done by greka's own production service rigs, which operate continually on all of greka's properties. These are highly training field crews that handle a variety of well completion or abandonment programs on a regular basis.

   Contractors for abandonment work would include the delivery of drilling muds from speeds trucking and delivery of cement from haliburton (an international corporation). Randolph construction will handle the excavation of the concrete pad, well cellar, and welding of a steel cap over the casinghead after completion of the abandonment work, plus removal of any pipelines, which are all above-ground lines.

14. What Operation and Maintenance (O&M) activities will be required?

TILLING, WATERING & GRADING WILL BE CONDUCTED AT
EACH BIO-PILE INVOLVING ONE WEEK PER MONTH

15. What is the anticipated length of time O&M will be required?

SEE ENVIRONMENTAL SCHEDULE

16. What environmental monitoring will be required and for what length of time?

QUARTERLY SOIL SAMPLING WILL OCCUR TO MONITOR
PROGRESS OF BIO-REMEDIATION. LENGTHS OF PROJECT

17. What non-remedial activities will occur at the project remediation site that are not associated with environmental cleanup efforts?

OIL AND GAS PRODUCTION OPERATIONS COMPLETELY
SURROUND THE ENVIRONMENTAL PROGRAM SITES. THE
CAL LEASE KC SITE ARE ALSO SURROUNDED BY FARMING.

18. Project Work/Cost Schedule- Attach a weekly and monthly project schedule showing major milestones, critical time elements, regulatory approvals, time variances, and a weekly/monthly project cost schedule which corresponds to the project work schedule.

## PROJECT SITE DESCRIPTION

19a. Environmental Condition of the Site- Attach a description of the current environmental condition of the remediation project site and surrounding properties, including historic assessments performed, contamination identified, extent of contamination (lateral and horizontal extent), site geology, surface and subsurface water, natural resources damages, air emissions, and public health issues.

19b. Attach copies of all environmental reports, audits, site assessments or studies of any nature ever conducted of the property, whether or not conducted or your behalf, of which you are aware.

19c. Is the applicant aware of any environmental reports, audits, site assessments or studies other than those attached in repsonse to question 19b.? Yes___ No ✓ If yes, provide details.

# CLEANUP COST CAP INSURANCE APPLICATION

## RESPONSE TO QUESTION 19A AND 19B

## SOIL PILE CLEANUP PROGRAM ON UCAL, SECURITY, AND HARBORDT PROPERTIES

### *UCAL LEASE PROPERTY*

There are three large piles of soil on this property that have been subject to remediation efforts. Greka will continue to bioremediate the piles and eventually scatter the piles over a large area and reseed the site. This involves further tilling and watering once a month and quarterly testing for total petroleum hydrocarbons until the TPH concentrations are below County and State threshold levels.

### *SECURITY FEE PROPERTY*

There are four piles of soil on this property that that have been subject to remediation efforts. Two of the sites now meet County threshold levels and can be graded, leveled out, and seeded. The remaining two piles need to be spread out more over plastic sheeting and need fertilizer as organic matter, plus extensive watering and tilling to enhance bioremediation. Greka will continue to bioremediate the piles and eventually scatter the piles over a large area and reseed these sites.

### *HARBORDT FEE PROPERTY*

There are four piles of soil on this property that have been subject to remediation efforts. Greka will continue to bioremediate the piles and eventually scatter the piles over a large area and reseed the site. This involves further tilling and watering once a month and quarterly testing for total petroleum hydrocarbons until the TPH concentrations are below County and State threshold levels. These piles are very large, but there is lots of round to spread the material out to enhance the bioremediation process.

There are no reports available on these piles. All of the information comes for visual observations and from comments from the field crews.

## KD SPILL PROGRAM

### *CALIFORNIA LEASE PROPERTY*

The prior operator of the California Lease has completed the abandonment of 50 oil wells, removal of the access roads, and restoration of the surface. Approximately 20 spill site have been identified on the property ranging from small spots on the ground to significant saturation sites. No assessment of the spills site have been done, although excavation work in the area indicates a layer of hardpan beneath the soil at a depth of 12 feet and no groundwater within 500 feet of the surface. Each of the spill sites will require evaluation and cleanup, either by excavation of the material and remediation or by insitu bioventing. None of the spills are anticipated to be very large, but the scope of the program has been designed over a five year period to assume a worst case level of impacts.

PROJECT COSTS

20a.    What are the total projected remediation costs?   *See Environmental Schedule*

Year 1 _____

Year 2 _____

Year 3 _____

Additional years (attach a description of scope and cost detail)

20b.    Please provide a breakdown of the individual components that make up the total per year costs listed in 20.a. above (please provide this breakdown for each year).   *See Enviro. Schedule*

21.    Is the applicant aware of any fact, circumstance or situation that may cause the actual remediation costs to increase above the projected remediation costs?

Yes___  No _✓_  If yes, give full details

_____

_____

_____

22.    What contingencies exist for unplanned schedule changes that could potentially affect project costs?

*All of the projects are long-range programs that can be extended over additional time to spread out additional costs.*

REGULATORY ACTIVITIES

23.    Is the site under a Consent Order, Agreement or other formal action by regulatory agencies? Yes _✓_ No _____ If yes, please attach a copy of all pertinent documents.

24.    What environmental regulatory agency has jurisdiction over the property?

*Santa Barbara County has regulatory jurisdiction, but is only monitoring program because cleanups are being done voluntarily by operator.*

25.    Are regulatory approvals required for sign off/no action after completion of cleanup? Yes _✓_ No _____ If yes, please describe.

*Upon final clean-up of any site testing will be done to ensure the soils are clean and a closure report will be submitted to County. The County will issue a closure letter if satisfied with report.*

26.  Attach a list of all third parties and non-applicant owned-property affected by the existing contamination (include a site plan delineating property boundaries).   No 3RD PARTIES

27.  What environmental activities, cleanup actions, assessments and liabilities are not part of the remedial study/ remedial action plan?

SHELL OIL COMPANY IS CONDUCTING A REMEDIAL ACTION
PLAN ON THIS SITE WITHIN THE UCAL LEASE AS PART
OF A PREVIOUS AGREEMENT. THE TWO SITES ARE NO WHERE
CLOSE TO PROJECTS TO BE CONDUCTED BY GEEKA.

<u>COVERAGE REQUEST</u>

28.  Desired insurance coverage

Limit of Liability _____

Proposed effective date _____

29.  Are any Joint Ventures being proposed for coverage under this policy?
Yes _____ No __✓__ . If yes, please describe.

_____

_____

_____

_____

30.  Attach a list of proposed insureds to be covered by this policy and each entity' s relationship to the property (only those entities specifically identified and approved by the underwriter will be designated as insureds).

The applicant represents that the above statements and facts are true and that no material facts have been suppressed or misstated.

Completion of this form does not bind coverage. Applicant's acceptance of Company's quotation and Company's written agreement to be bound is required to bind coverage and to issue policy. It is agreed that this form shall be the basis of the contract should a policy be issued, and will be attached to the policy.

All written statements and materials furnished to the Company in conjunction with this application are hereby incorporated by reference into this application and made apart hereof.

<u>* NOTICE TO NEW YORK APPLICANTS</u>
"ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION."

## * NOTICE TO OHIO APPLICANTS

"ANY PERSON, WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."

## * NOTICE TO KENTUCKY APPLICANTS

"ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

## *NOTICE TO PENNSYLVANIA APPLICANTS

"ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES."

## * NOTICE TO ARKANSAS APPLICANTS

"ANY PERSON WHO, KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

## * NOTICE TO COLORADO APPLICANTS .

"IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES."

## *NOTICE TO FLORIDA APPLICANTS

"ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER, FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY IN THE THIRD DEGREE."

## * NOTICE TO MINNESOTA APPLICANTS

"ANY PERSON WHO SUBMITS AN APPLICATION OR FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME."

## * NOTICE TO NEW JERSEY APPLICANTS

"ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES."

If an order is received, the application is attached to the policy so it is necessary that all questions be answered in detail.

APPLICANT By: _____, VP    DATE _12·19·01_
           (signature of officer of corporation)

APPLICANT _Susan M. Whalen, VP Corp Affairs_
           (print name & title)

BROKER _____    DATE _____
        (print name of firm)

        _____
        (address of brokerage firm)

        _____
        (contact person & telephone number)

        _____
        (agent license number)

# AMERICAN INTERNATIONAL COMPANIES

Name of insurance Company to which Application is made (herein called the Company)

## POLLUTION LEGAL LIABILITY APPLICATION

### THIS IS AN APPLICATION FOR A CLAIMS -MADE POLICY

**INSTRUCTIONS**

(A)  This application requires that contact persons be provided for each location.  The applicant is responsible for obtaining and reviewing whatever records are available, whether in their possession or in the public domain, which are necessary in order to answer any of the questions in this application.

(B)  Provide the following documents and materials along with the completed <u>original signed and dated</u> application:

    * Audited financials and/or 10K for the latest three (3) years.
    { }enclosed    { }information to follow    { }Do not exist

    * Schedule of EIL and GL insurance policies for the past three (3) years.
    (policy #, policy term, type of policy, and exclusions)
    { }enclosed    { }information to follow    { }Do not exist

    * Any Environmental Surveys/Audits conducted at the location within the past three years.
    { }enclosed    { }information to follow    { }Do not exist

(C)  Once this application is received, a member of our staff will call the contact person(s) you provide in Table A (attached to this application) in order to continue the application process.  <u>The attached Telephone Survey Outline summarizes the type of information that will be requested from each contact person, and should be sent to the contact person(s) in preparation for our staff call.</u>

(D)  If necessary, use additional sheets in order to provide the requested information.

1.  **NAMED INSURED:**
    *GREKA SMU, INC. dba GREKA ENERGY*

    LIST SUBSIDIARY COMPANIES REQUESTING COVERAGE:

    POST OFFICE ADDRESS:
    *PO Box 4209*
    *SANTA MARIA CA 93456*

2.  **NAMED INSURED IS A:**
    { }partnership {✓}corporation { }joint venture { }other _____

3.  **DESCRIBE SPECIFICALLY THE OPERATIONS OF THE INSURED:**
    (include a diagram of the company structure)
    *OIL & GAS PRODUCTION OPERATIONS*

4.    **SITE CONTACTS (See Table A attached to this Application)**
*The individuals the applicant lists in the attached Telephone Survey Outline (Table A) should be qualified to provide information for all site activities at the referenced locations, and should be prepared to respond to the items in the Survey. If necessary, copy Table A in order to provide additional location information.*

**NOTE:**

*For the purposes of Question 5. "YOU" includes the Corporation, Entity, or Partnership of the applicant and any Director, Officer or Partner thereof.*

5.

A.    HAVE YOU DURING THE PAST FIVE (5) YEARS HAD ANY REPORTABLE RELEASES OR SPILLS OF HAZARDOUS SUBSTANCES, HAZARDOUS WASTE OR ANY OTHER POLLUTANTS, AS DEFINED BY APPLICABLE ENVIRONMENTAL STATUTES OR REGULATIONS? YES __✓__ NO _____ IF YES, DESCRIBE IN DETAIL:

*Pipeline leak into creek. Traveled several hundred feet down creek. Site cleaned-up & restored to natural state. Located on company property. Occurred summer 2000.*

B.    HAVE YOU DURING THE LAST FIVE (5) YEARS BEEN PROSECUTED, OR ARE YOU CURRENTLY BEING PROSECUTED, FOR CONTRAVENTION OF ANY STANDARD OR LAW RELATING TO THE RELEASE OR THREATENED RELEASE FROM THE LOCATION OF A HAZARDOUS SUBSTANCE, HAZARDOUS WASTE OR ANY OTHER POLLUTANT? YES _____ ✓ NO _____ IF YES, DESCRIBE IN DETAIL:

C.    LIST ALL CLAIMS MADE AGAINST YOU DURING THE PAST FIVE YEARS FOR CLEANUP OR RESPONSE ACTION, "TOXIC TORT" OR OTHER BODILY INJURY, OR PROPERTY DAMAGE, RESULTING FROM THE RELEASE OF HAZARDOUS SUBSTANCES, HAZARDOUS WASTE, OR OTHER POLLUTANTS, FROM THIS LOCATION OR OTHER LOCATIONS OWNED OR OPERATED BY YOU, INTO THE ENVIRONMENT. PROVIDE A BRIEF DESCRIPTION OF THE CLAIM(S) AND ITS DISPOSITION. IF NONE, SO STATE.

*None*

61868 (1/95)

2

D.    AT THE TIME OF THE SIGNING OF THIS APPLICATION, DO YOU KNOW OF ANY FACTS OR CIRCUMSTANCES WHICH MAY REASONABLY BE EXPECTED TO RESULT IN A CLAIM OR CLAIMS BEING ASSERTED AGAINST YOUR COMPANY FOR ENVIRONMENTAL CLEANUP OR RESPONSE, OR FOR BODILY INJURY OR PROPERTY DAMAGE ARISING FROM THE RELEASE OF POLLUTANTS INTO THE ENVIRONMENT?

YES _____ NO __✓__ IF YES, DESCRIBE IN DETAIL:

_____
_____
_____

**The applicant represents that the above statements and facts are true and that no material facts have been suppressed or misstated.**

### * NOTICE TO NEW YORK APPLICANTS

"ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION."

### * NOTICE TO OHIO APPLICANTS

"ANY PERSON, WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."

### NOTICE TO KENTUCKY APPLICANTS

"ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

If an order is received, the application is attached to the policy so it is necessary that all questions be answered in detail.

APPLICANT _____    DATE _12/19/01_
                    (signature of owner or officer)

APPLICANT __Susan W. Whalen VP Corp Affairs__
                    (print name & title)

BROKER _____    DATE _____
                    (print name of firm)

          _____
                    (address of brokerage firm)

          _____
                    (contact person & telephone #)

61868 (1/95)

3

## TABLE A: LOCATION CONTACTS

| (1) | (2) |
|---|---|
| **Location Name and Address:** | **Location Name and Address:** |
| CAT CANYON FIELD | |
| 6801 Palmer Road | |
| Santa Maria Ca 93454 | |
| **Description of Operations:** | **Description of Operations:** |
| General Site Clean-up & | |
| Maintenance for Oil Gas ops | |
| **Contact Name & Title:** | **Contact Name & Title:** |
| Susan Whalen | |
| Corporate Liaison | |
| **Contact Address:** | **Contact Address:** |
| Greka Energy | |
| 3201 Airport Dr. #201 | |
| Santa Maria Ca 93455 | |
| **Contact Phone & Fax Nos.:** | **Contact Phone & Fax Nos.:** |
| (805) 347-8700 x 205 | |
| fax (805) 347-1072 | |

| (3) | (4) |
|---|---|
| **Location Name and Address:** | **Location Name and Address:** |
| **Description of Operations:** | **Description of Operations:** |
| **Contact Name & Title:** | **Contact Name & Title:** |
| **Contact Address:** | **Contact Address:** |
| **Contact Phone & Fax Nos.:** | **Contact Phone & Fax Nos.:** |

61868 (1/95)

## AMERICAN INTERNATIONAL COMPANIES
## POLLUTION LEGAL LIABILITY
## TELEPHONE SURVEY OUTLINE

1.  Description of principal operations

2.  EPA Identification Number(s)

3.  Have any Environmental Surveys/Audits been conducted at the location within the past three years?    { } YES  { } NO   If yes , please forward a copy.

4.  RAW MATERIALS/WASTE MANAGEMENT (Include on-site disposal such as closed landfills, surface impoundments, deep well injection, etc.)
    - Type
    - Materials or raw waste?
    - Amount on-site
    - Hazardous class/regulatory status
    - Method of storage
    - Environmental controls

5.  STORAGE AREAS.
    (A)  Description of container/drum storage areas
       - How many?/How much?
       - What type of secondary containment is provided?
    (B)  Description of above-ground storage tanks
       - How many?/How much?
       - Age?
       - What type of secondary containment is provided?
    (C)  Description of underground storage tanks
       - How many?/How much?
       - Age?
       - Type of leak detection?

6.  Age of facility

7.  Site History: Description of past occupancies & land use:

8.  Surrounding Environment and Land Use (Including population, residences, geographic features/sensitive habitats, industries, waterways, etc.)

9.  PERMITS AND GROUNDWATER MONITORING (number of ...and number of exceedences)
    (A)  Permits
       - POTW
       - NPDES
       - AIR
       - Stormwater
    (B)  On-site groundwater monitoring wells
       - How many
       - Forward groundwater monitoring results from past four (4) sampling events and map showing the location of wells and groundwater flow direction.

10. ENVIRONMENTAL MANAGEMENT AND COMPLIANCE

    (A)  Emergency response plan in place?
- SPCC Plan in place?
- Fire Protection Plan in place?

    (B)  Environmental Personnel Training Program in place?
- On-Site Environmental Professional?

    (C)  Documented Inspection Program in Place?
    (D)  Previous pollution events?
    (E)  On-going remediation projects?
    (F)  Existing contamination?
    (G)  Public complaints, law suits?
    (H)  Regulatory issues
- NOV's
- Consent Orders
- Corrective Actions
- Other

11.    Information on waste sent off-site (such as type, quantity, mode of transport, and name, address and description of disposal and/or transfer facilities).

# EXHIBIT "3"

**AISL**
INSURANCE COMPANY

A Member Company
of American International
Group, Inc.

# AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

A Capital Stock Insurance Company
175 Water Street, Twelfth Floor
New York, New York 10038

## POLLUTION LEGAL LIABILITY SELECT ® CLEAN-UP COST CAP INSURANCE

## DECLARATIONS

**MANY OF THE COVERAGES CONTAIN CLAIMS-MADE-AND-REPORTED REQUIREMENTS.
PLEASE READ CAREFULLY.**

**POLICY NUMBER:**              8087804

**Item 1:    NAMED INSURED:**   GREKA ENERGY CORPORATION

                **ADDRESS:**    630 5TH AVE STE #501
                                NEW YORK, NY 10111

**Item 2:    POLICY PERIOD:**
**FROM**  June 26, 2002                **TO**  June 26, 2007
          12:01 A.M. Standard time at the address of the Named Insured shown above.

**Item 3:    COVERAGES AND COVERAGE SECTION LIMITS AND DEDUCTIBLES**

This Policy includes only those Coverages as stated in Section I of the Policy for which deductibles and limits of liability appear below. If no deductible or limits of liability appears for a Coverage, that Coverage does not apply.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|----------|--------------------------|---------------------|----------------------------------|
| A | $100,000 | $10,000,000 | $10,000,000 |
| B | $100,000 | $10,000,000 | $10,000,000 |
| C | $100,000 | $10,000,000 | $10,000,000 |
| D | $100,000 | $10,000,000 | $10,000,000 |
| E | $100,000 | $10,000,000 | $10,000,000 |
| F | $100,000 | $10,000,000 | $10,000,000 |
| G | | | |
| H | | | |
| I | | | |

| Coverage | Business Interruption (Days) Limit | Business Interruption ($) Limit |
|----------|-----------------------------------|---------------------------------|
| J | | |

76952 (11/00)
CI1161                                                                 Page 1 of 2

NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

Copyright, American International Group, Inc. ®, 2000

| Coverage | Limit of Liability | Self-Insured Retention | Co-Insurance Participation Percentage | |
|---|---|---|---|---|
| K only | | | a) Insured | 0.000% |
| | | | b) Company | 0.000% |
| K and L combined | $10,000,000 | $1,198,400 | a) Insured | 15.000% |
| | | | b) Company | 85.000% |

**Item 4:** **POLICY AGGREGATE LIMIT:**    $10,000,000

**Item 5(a):** **INSURED PROPERTY(S) - COVERAGES A-J**
See Attached Schedule(s) of Insured Properties

**Item 5(b):** **INSURED PROPERTY(S) - COVERAGES K and L**
See Attached Schedule(s) of Insured Properties

**Item 6:** **POLICY PREMIUM:**  $425,000.00

**Item 7:** **RETROACTIVE DATE:**  Under Coverages N/A, the **Pollution Conditions** must commence on or after the date shown below.

Retroactive Date:   6/26/2002
(Enter date or "none" if no Retroactive Date applies.)

**Item 8:** **CONTINUITY DATE:**   6/26/2002

**Item 9:** **TERMINATION DATE:**  6/26/2007

**Item 10:** **CLEAN-UP COST PROGRESS REPORT SUBMISSION SCHEDULE:**
Quarterly

**Broker:** INSURANCE MANAGEMENT ASSOCIATES OF COLORADO, INC
1550 17TH STREET, SUITE 600
DENVER, CO 80202



COPY
_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

Copyright, American International Group, Inc. ©, 2000

## SCHEDULE OF INSURED PROPERTIES, COVERAGES, AND COVERAGE SECTION LIMITS AND DEDUCTIBLES ENDORSEMENT

It is hereby agreed that the following location(s) is (are) included in Item 5(a) and/or 5(b) of the Declarations as **INSURED PROPERTY(S)**, subject to all of the terms and conditions of the Policy, and that the corresponding Coverages, deductibles, and limits of liability shown for each such **INSURED PROPERTY** are included in Item 3 of the Declarations:

### Item 5a & 5b:  INSURED PROPERTY(S):

1. CAT CANYON FIELD
2. LOS FLORES FIELD
3. CLARK AVE. FIELD
4. SANTA MARIA VALLEY FIELD
5. ZACA FIELD
6. HARBORDT PROPERTY PILE, REMEDIATION
7. UCAL PROPERTY PILE, REMEDIATION

With respect to the above-listed **Insured Property(s)**, Item 3 of the Declarations shall provide as follows:

Item 3: <u>Coverages and Coverage Section Limits and Deductibles</u>

This Policy includes only those Coverages as stated in Section I. of the Policy for which deductibles and limits of liability appear below.  If no deductible or limits of liability appears for a Coverage, that Coverage doeas not apply.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| A | $100,000 | $10,000,000 | $10,000,000 |
| B | $100,000 | $10,000,000 | $10,000,000 |
| C | $100,000 | $10,000,000 | $10,000,000 |
| D | $100,000 | $10,000,000 | $10,000,000 |
| E | $100,000 | $10,000,000 | $10,000,000 |
| F | $100,000 | $10,000,000 | $10,000,000 |

| Coverage | Business Interruption (Days) Limit | Business Interruption ($) Limit |
|---|---|---|
| J | | |

| Coverage | Limit of Liability | Self-Insured Retention | Co-Insurance Participation Percentage | |
|---|---|---|---|---|
| K only | | | a) Insured | 0.000% |
| | | | b) Company | 0.000% |
| K and L combined | $10,000,000 | $1,198,400 | a) Insured | 15.000% |
| | | | b) Company | 85.000% |

All other terms, conditions, and exclusions shall remain the same.

COPY

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

76973 (6/01)                                                                        PAGE 1 OF 1
CI1512

## SCHEDULE OF INSURED PROPERTIES, COVERAGES, AND
## COVERAGE SECTION LIMITS AND DEDUCTIBLES ENDORSEMENT

It is hereby agreed that the following location(s) is (are) included in Item 5(a) and/or 5(b) of the Declarations as **INSURED PROPERTY(S)**, subject to all of the terms and conditions of the Policy, and that the corresponding Coverages, deductibles, and limits of liability shown for each such **INSURED PROPERTY** are included in Item 3 of the Declarations:

### Item 5a & 5b: INSURED PROPERTY(S):

8. CALIFORNIA PROPERTY KD SPILL, CLEAN-UP
9. SECURITY PROPERTY PILE, REMEDIATION
10. NICHOLSON PROPERTY SUMP, CLEAN-UP
11. ZACA PROPERTY PLUG AND ABANDON, 14 WELLS

With respect to the above-listed **Insured Property(s)**, Item 3 of the Declarations shall provide as follows:

### Item 3: Coverages and Coverage Section Limits and Deductibles

This Policy includes only those Coverages as stated in Section I. of the Policy for which deductibles and limits of liability appear below. If no deductible or limits of liability appears for a Coverage, that Coverage doeas not apply.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| A | $100,000 | $10,000,000 | $10,000,000 |
| B | $100,000 | $10,000,000 | $10,000,000 |
| C | $100,000 | $10,000,000 | $10,000,000 |
| D | $100,000 | $10,000,000 | $10,000,000 |
| E | $100,000 | $10,000,000 | $10,000,000 |
| F | $100,000 | $10,000,000 | $10,000,000 |

| Coverage | Business Interruption (Days) Limit | Business Interruption ($) Limit |
|---|---|---|
| J | | |

| Coverage | Limit of Liability | Self-Insured Retention | Co-Insurance Participation Percentage | |
|---|---|---|---|---|
| K only | | | a) Insured | 0.000% |
| | | | b) Company | 0.000% |
| K and L combined | $10,000,000 | $1,198,400 | a) Insured | 15.000% |
| | | | b) Company | 85.000% |

All other terms, conditions, and exclusions shall remain the same.



COPY

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

# FORMS SCHEDULE

**Named Insured:**     GREKA ENERGY CORPORATION

**Policy No.:**     8087804

**Effective Date:**     JUNE 26, 2002

| End No | Form Name | Form Number |
|--------|-----------|-------------|
|  | AISLIC POLICY COVERAGE | 76952 |
|  | AISLIC DECLARATIONS | 76956 |
|  | NOTICE OF LOSS/NOTICE OF CLAIM | CI1141 |
|  | SCHEDULE OF INSURED PROPERTIES | 76973 |
| 1 | SCHEDULE OF INSURED CONTRACTS | MNSCPT |
| 2 | ADDITIONAL INSURED | MNSCPT |
| 3 | ADDITIONAL NAMED INSURED | MNSCPT |
| 4 | DEFINITION OF REMEDIAL PLAN | MNSCPT |
| 5 | KNOWN CONTAMINANT EXCLUSION | MNSCPT |
| 6 | CONTAMINANT EXCLUSION | MNSCPT |
| 7 | OILFIELD EQUIPMENT EXCLUSION | MNSCPT |
| 8 | KNOWN CONTAMINANT EXCLUSION | MNSCPT |
| 9 | CANCELLATION, MATERIAL CHANGE IN USE | MNSCPT |
| 10 | DEFINITION OF SCHEDULED CONTRACTOR | MNSCPT |
| 11 | MICROBIAL MATTER | MNSCPT |
| 12 | WAIVER OF SUBROGATION | MNSCPT |
| 13 | NAMED INSURED | MNSCPT |
| 14 | CANCELLATION AMENDMENT | MNSCPT |
| 15 | DISCLOSED DOCUMENTS | 76969 |
| 16 | DEFINITION OF CLEAN-UP | MNSCPT |
| 17 | WAR EXCLUSION | 79098 |
| 18 | TERRORISM EXCLUSION | 79097 |

ENDORSEMENT NO. 1

This endorsement, effective 12:01 AM:   June 26, 2002

Forms a part of policy no.:        8087804

Issued to:   GREKA ENERGY CORPORATION

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### SCHEDULE OF INSURED CONTRACTS

It is hereby agreed that the following are scheduled as Insured Contracts to this Policy:

#### INSURED CONTRACTS

Asset Sale Agreement dated May 31, 2001  between VINTAGE PETROLEUM CALIFORNIA, INC., an Oklahoma corporation ("Seller"), with a place of business at 110 West Seventh Street, Tulsa, Oklahoma 74119, and GREKA SMV, INC., a Colorado corporation ("Buyer"), with a place of business at 3201 Airpark Drive, Suite 201, Santa Maria, CA 93455 for the sale and purchase of interests in the Cat Canyon , Los Flores, Clark Avenue, Santa Maria Valley, and Zaca Fields.

All other terms, conditions and exclusions remain the same.



_____
Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 2

**This endorsement, effective 12:01 AM:**   June 26, 2002

**Forms a part of policy no.:**        8087804

**Issued to:**  GREKA ENERGY CORPORATION

**By:**  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

<u>ADDITIONAL INSURED(S) ENDORSEMENT</u>

Solely with respect to Coverages A through F, it is hereby agreed that the following entity(s) is (are) included as an additional insured(s). Coverage for such additional insured(s) applies under this Endorsement:

1. Solely to the additional insured's liability arising out of the Named Insured's ownership, operation, maintenance or use of the Insured Property(s) and

2. Only if the additional insured is named in a suit as a co-defendant with the Named Insured, alleging the additional insured is liable on the basis described in paragraph 1 above.

<u>ADDITIONAL INSURED(S)</u>

Vintage Petroleum California, Inc., an Oklahoma corporation
Vintage Petroleum, Inc.

All other terms, conditions and exclusions remain the same.



Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 3

This endorsement, effective 12:01 AM:   June 26, 2002

Forms a part of policy no.:        8087804

Issued to:  GREKA ENERGY CORPORATION

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### ADDITIONAL NAMED INSURED ENDORSEMENT

Solely with respect to Coverages K and L, it is hereby agreed  that the following listed entity(s) shall become  Named Insured only in the  event the entity(s) become responsible for the execution  of the Remedial Plan due to the occurrence of any of the following:

    1) Inability of the Named Insured Greka SMV, Inc. to perform Clean-Up or retain a Scheduled Contractor.

    2) Insolvency or the voluntary or involuntary bankruptcy of Named Insured Greka SMV, Inc.

    3) Written request to the Company by the  Named Insured Greka SMV, Inc. to  be  removed from the Policy.

In  the  event  the  following  entity(s)  become  Named  Insured(s),  the  entity  first  listed  on  this Endorsement, or another  entity  agreed upon  by the  Company and  all  entities listed  hereon shall assume the responsibilities to provide  Clean-up Progress Reports and report Pollution Conditions and shall be responsible for receipt and acceptance of endorsements to the Policy and giving and receiving notice of cancellation.  Provided, however, the Company shall provide copies of any notice to cancel the Policy by the Company to all Named Insureds.

The addition of any  listed  entity(s) as a Named Insured shall not  change the Limits of Liability, the Self-Insured Retention, any applicable co-insurance, the Remedial Plan or any terms  or conditions of the Policy. The Company shall retain the right to approve any new  Scheduled Contractor.

#### Entities

Vintage Petroleum California, Inc., an Oklahoma corporation
Vintage Petroleum, Inc.

All other terms, conditions and exclusions remain the same.



_____
Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 4


This endorsement, effective 12:01 AM:  June 26, 2002

Forms a part of policy no.:        8087804

Issued to:  GREKA ENERGY CORPORATION

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### DEFINITION OF REMEDIAL PLAN ENDORSEMENT

It is hereby  agreed that for  purposes of Section  VII. DEFINITIONS, Paragraph M.  Remedial Plan is defined as the following scheduled and attached documentation:

| Document Title | Author | Date |
|---|---|---|
| Environmental Schedule | Greka SMV, Inc. | July 9, 2001 |
| Email titled Well Abdmt program | Greka SMV, Inc. | August 2, 2001 |


All other terms, conditions and exclusions remain the same.



Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 5

This endorsement, effective 12:01 AM:    June 26, 2002

Forms a part of policy no.:        8087804

Issued to:  GREKA ENERGY CORPORATION

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### KNOWN CONTAMINANT EXCLUSION ENDORSEMENT

For Coverages A-F,  K and  L, it  is hereby  agreed that  this insurance  does not  apply to   Clean-Up Costs, Claims, Loss, Actual Loss, Extra Expense or loss of Rental Value due to treatment or disposal of Pollution Conditions  that are hazardous waste, as defined by  Code of Federal Regulations Title 40, Sections 260  through  265,  contained in the   soil, groundwater,  surface water, air at the  22 former Vintage Petroleum facilities as  listed in the Schedule of Insured Properties endorsement that is part of this  Policy.

All other terms, conditions and exclusions remain the same.

COPY

_____

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 6

This endorsement, effective 12:01 AM:    June 26, 2002

Forms a part of policy no.:        8087804

Issued to:   GREKA ENERGY CORPORATION

By:    AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### CONTAMINANT EXCLUSION ENDORSEMENT

It is hereby agreed that  the following is added  as Paragraph H,  Known Contaminant , to Section II, Exclusions, Subsection 1, COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES

H.    Known Contaminant

arising out of Pollution Conditions on,  under, or migrating beyond the  boundaries of the 22 former Vintage Petroleum facilities identified in  the Schedule of Insured Properties endorsement that is  part of this Policy, if such Pollution Conditions are identified or characterized in any Environmental Report, assessment or due diligence document and are not identified in the Disclosed Documents Endorsement. This exclusion may be removed or modified by the Company  through the issuance of an endorsement,  after receipt and review of any Environmental  Report, assessment, or due diligence document  regarding the 22 properties.    The Company will  not unreasonably  withhold the issuance  of any endorsement modifying  this exclusion once the  Named Insured has  furnished  adequate underwriting information.

All other terms, conditions and exclusions remain the same.



Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 7

This endorsement, effective 12:01 AM:   June 26, 2002

Forms a part of policy no.:        8087804

Issued to:   GREKA ENERGY CORPORATION

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### KNOWN CONTAMINANT EXCLUSION ENDORSEMENT

For Coverages A-F,  K and  L, it is hereby  agreed that  this insurance  does not  apply to   Clean-Up
Costs, Claims,  Loss, Actual  Loss, Extra  Expense or  loss of  Rental  Value due  to or  arising  from
decommissioning and  disposal of  oilfield-related equipment  such  as, but  not limited  to, pumping
equipment, pipelines, concrete pads, tanks, gas plants, concrete.

All other terms, conditions and exclusions remain the same.



Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 8

This endorsement, effective 12:01 AM:   June 26, 2002

Forms a part of policy no.:        8087804

Issued to:   GREKA ENERGY CORPORATION

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### KNOWN CONTAMINANT EXCLUSION ENDORSEMENT

As applies to  Coverages A-F,  it is  hereby agreed  that this insurance  does not  apply to   Clean-Up Costs, Claims, Loss, Actual Loss, Extra Expense or loss of  Rental Value due to Pollution Conditions arising from well blowouts and  Pollution Conditions  or  Pollutants that are subject  to the Remedial Plan and specified under coverage K and L for scheduled locations.

All other terms, conditions and exclusions remain the same.



Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 9

**This endorsement, effective 12:01 AM:**   June 26, 2002

**Forms a part of policy no.:**        8087804

**Issued to:**   GREKA ENERGY CORPORATION

**By:**   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CANCELLATION, MATERIAL CHANGE IN USE ENDORSEMENT**

It is hereby agreed that Section **VI. CONDITIONS,** Paragraph **G.** Cancellation, Subparagraph **3.** is deleted in its entirety and replaced with the following:

3.   A change in operations at an **Insured Property** during the **Policy Period** that materially increases a risk covered under this Policy.  For purposes of determining whether a change in operations materially increases the risk, any change of operations that results in more stringent remediation standards than those imposed on the **Insured Property** at the **Inception Date** will be considered material.

All other terms, conditions and exclusions remain the same.



Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 10

This endorsement, effective 12:01 AM:   June 26, 2002

Forms a part of policy no.:        8087804

Issued to:  GREKA ENERGY CORPORATION

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### DEFINITION OF SCHEDULED CONTRACTOR ENDORSEMENT

It is hereby agreed that for purposes of Section VII. DEFINITIONS, Paragraph O.ScheduledContractor is defined to include only the following:

| Contractor/Type | Contractor's Address & Telephone Number |
|---|---|
| TBD | TBD |

All other terms, conditions and exclusions remain the same.



Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 11

This endorsement, effective 12:01 AM:    June 26, 2002

Forms a part of policy no.:        8087804

Issued to:   GREKA ENERGY CORPORATION

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### MICROBIAL MATTER EXCLUSION ENDORSEMENT

It is hereby agreed as follows:

1.    Section VI., DEFINITIONS, paragraph U. is deleted in its entirety and replaced with the following:

U. **Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts and concentrations discovered. Pollution Conditions shall not include **Microbial Matter.**

The following is added to Section VI., DEFINITIONS, as paragraph **DD., Microbial Matter.**

DD. **Microbial Matter** means fungi or bacterial matter which reproduces through the release of spores or the splitting of cells, including but not limited to, mold, mildew and viruses, whether or not such Microbial Matter is living.

All other terms, conditions and exclusions remain the same.



_____

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 12

This endorsement, effective 12:01 AM:  June 26, 2002

Forms a part of policy no.:        8087804

Issued to:  GREKA ENERGY CORPORATION

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### WAIVER OF SUBROGATION ENDORSEMENT

It is hereby agreed that Section  VI. CONDITIONS, paragraph B.,Subrogation, is deleted in its entirety and replaced with the following:

Subrogation - In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights including without limitation, assignment of the Insured's rights against any person or organization who caused Pollution Conditions on account of which the Company made any payment under this Policy. The Insured shall do nothing to prejudice the Company's rights under this paragraph subsequent to Loss. Any recovery as a result of subrogation proceedings arising out of the payment of  Loss covered under this Policy shall accrue first to the Insured to the extent of any payments in excess of the limit of coverage, then to the Company to the extent of its payment under the Policy, and then to the  Insured to the extent of its Deductible. Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery. Notwithstanding anything to the contrary in this Condition B, the Company hereby expressly waives any rights of subrogation against the following: Vintage Petroleum, Inc., a Delaware Corporation and Vintage Petroleum California, Inc., an Oklahoma corporation.

All other terms, conditions and exclusions remain the same.



Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 13

**This endorsement, effective 12:01 AM:** June 26, 2002

**Forms a part of policy no.:**    8087804

**Issued to:**  GREKA ENERGY CORPORATION

**By:**  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### NAMED INSURED(S) ENDORSEMENT

It is hereby agreed that the following entity(ies) is (are) included as named insured(s), in Item 1 of the Declarations, but solely as respects liability arising out of the ownership, operation, maintenance or use of the insured Property(ies) designated in Item 5 of the Declarations.  The first Named Insured, if any, previously designated in Item 1 of the Declarations shall remain unchanged as such.

#### NAMED INSURED(S)

Greka Energy Corporation

All other terms, conditions and exclusions remain the same.



Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 14

This endorsement, effective 12:01 AM:   June 26, 2002

Forms a part of policy no.:        8087804

Issued to:   GREKA ENERGY CORPORATION

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CANCELLATION AMENDMENT ENDORSEMENT

It is hereby agreed that Section **VI. CONDITIONS**, paragraph   **G, Cancellation,**  1 is deleted in its entirety and replaced with the following:

G.  Cancellation - This  Policy may be  cancelled by the  Named Insured by surrender thereof to the Company or any  of its authorized  agents or by  mailing to the  Company written notice stating when thereafter the cancellation shall be effective.  This policy may  not be cancelled by the Named Insured without  written agreement from  any Additional Insured.  This  Policy may be  cancelled by  the  Company only  for the  reasons  stated below  by  mailing to  the Named Insured at  the  address shown in  the Policy,  written  notice stating  when not  less than 60 days  (10 days  for nonpayment of premium)  thereafter such  cancellation shall  be effective.  Proof of mailing of such notice shall be sufficient proof of notice.

1.  Material misrepresentation by the  Insured,

2.  The Insured's  failure  to  comply with the  material  terms,  conditions or  contractual obligations under this Policy, including  failure to pay any  premium or Deductible when due,

3.  A change in operations  at an Insured Property  during the Policy  Period that materially increases a risk covered under this Policy.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of  the **Policy Period.**   Delivery of such  written  notice either by the  **Named Insured** or by  the Company shall  be equivalent to  mailing.  If the  **Named Insured**  cancels, earned premium is 100% at inception and  there shall be no return premium. If the Company cancels, earned premium shall be computed pro-rata.  Premium  adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

All other terms, conditions and exclusions remain the same.



_____
Authorized Representative
or countersignature (where required by law)