# EXHIBIT "10"

# GARRISON LAW CORPORATION

August 27, 2008

*Via U.S. Mail, Facsimile & Email*

McCurdy & Fuller
Mary McCurdy, Esq.
4300 Bohannon Drive, Suite 240
Menlo Park, CA, 94025
Telephone: (650) 618-3500
Facsimile: (650) 618-3599

Re:  **Insured:**          Greka Oil & Gas, Inc.
     **Policy Numbers:**   808784 and AIG related policies
     **Claim Number:**     182-093161 and Greka 0001 to Greka 0015
     **Litigation:**       <u>Wells Fargo Bank et al., v. Greka et al., Santa Barbara County
                           Superior Court Civil Action No. CIV 1155864</u>
     **Subject:**          Reply to Your August 26, 2008 Email and Demand for Funding
                           of $5.0 Million and $7.1 Million Settlements

The various Coverages A, B, C, D, E, F, G, H, and I all include AIG's requirement to indemnify and
"pay on behalf of the Insured, Loss that the Insured becomes legally obligated to pay." Such a
covered loss includes the $7.1 million that Greka must pay Vintage as well as the $5 million (or $15
million) that Greka must pay Wells Fargo and Union Bank. Greka demands AIG fund the $5.0
Million to Plaintiffs pursuant to previously provided wiring instructions. Provide <u>written notice</u> by
1pm today of AIG's performance.

This demand follows our many emails, letters, meetings, and calls regarding the above. This is also
in follow up to your email of August 26, 2008 4:18 PM wherein you state "Greka will receive
reimbursement for the reasonable and necessary defense fees and costs no later than September 5,
2008." We do appreciate this long awaited payment, as stated previously and below, this has always
been the expectation of your insured.

Plaza Linda Vista
Suite 100   1525 State Street   Santa Barbara, California 93101
Phone (805) 957-1700   Fax (805) 957-1709
glc@garrisonlawcorp.com

Reply to Your August 26, 2008 Email and Demand for Funding of $5.0 Million and $7.1 Million Settlements
August 27, 2008
Page 2

This is also in reply to your email dated August 26, 2008 at 6:00:06 PM PDT. In same, we do not address all, but there are several inaccuracies and matters that must be addressed.

### Factual Basis for Covered Claims & Settlement Demands of $12.1 Million Covered Under 808784 and AIG Related Policies

First, you state that you cannot explain your stance regarding funding the settlement in above referenced matter. You state:

> in order to fully respond to this question, we would need an explanation from Greka . . . as to what the damages that plaintiffs were seeking from Greka. However, with the limited information that we have been provided, we understand that the damages that were sought from Greka . . . were only relating to the value of oil and gas that Greka allegedly removed from the property.

Your above statement is inaccurate, shocking and in less than good faith for at least three reasons:

1.  You imply that you might not fund the settlement, yet you also state that you cannot answer any question about this decision without "an explanation from Greka" and more information. **Any denial of funding of the settlement while stating you do not have information needed to even answer questions about it would be in less than good faith.**

2.  You ask what are the "damages that plaintiffs were seeking from Greka?" You have this information. Please reference the previously produced Complaint and its 14 causes of action and detailed allegations. Specifically see the causes of action for four, five, six, and seven as referenced in Mr. Nicholas Capuano's letter confirming coverage dated December 1, 2005 (see Acceptance of defense letter enclosure). Both Vintage and Wells Fargo/Union Bank demands and the settlement claims these covered damages to be paid by Greka.

3.  You state that you also have received "limited information." This is simply not true. We have provided you with literally everything, indexed and digitized, running tens of thousands of pages. We note that all we were required to do is provide the Company with "access" to "review" documents. Nevertheless, all the information that you really require is the Complaint and the Settlement Agreement's, along with Policy #8087804 to make the clear and correct determinations of defense and indemnification. (Policy Number # "8087804" per Binder Letter and Policy, and stated apparently incorrectly as "policy no. 808784" per your email, and related AIG policies from prior years).

## AIG's Position is Contra to Well-Accepted California Law

Your email also falsely states that "the only issues for which Greka and the plaintiffs could be settling are for the value of the oil and gas allegedly removed from the property." You claim that the other settlement "language is superfluous." That claim appears to be in less than good faith as you just can't declare something to be superfluous when in fact it is central. Your email somehow wishes to change reality by denying it. As California law requires, exceptions and exclusions (and citing wrong facts to deny coverage) are construed strictly against the insurer, AIG, and liberally in favor of the insured, Greka (*Arenson v. National Auto. & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 83; *City of Santa Monica v. Royal Indem. Co.,* (1958) 157 Cal.App.2d 50, 54).

Greka was sued for environmental contamination and other causes of action (per attached Complaint). Greka settled that lawsuit (in the presence of AIG trial monitoring counsel). The Settlement makes no mention of the value of oil or gas but does refer to known and unknown environmental contamination and the scheduled Insured Contract. The Settlement Agreement states:

> Plaintiff will release Greka and the other Greka entities from any and all claims known or unknown that were made or could have been made from any of the facts alleged in the plaintiffs' compliant in case number 1155864, including any required performance and well abandonment. Similarly, Greka and the other Greka entities will release the plaintiffs and each of them relating in any way whatsoever to the central facilities agreement, the new united California lease, the new California lease and/or the new Bradley lease and/or relating in any way whatsoever to all or any part of the cat canyon property. For clarity, this would include the cross-complaint that is pending against union bank in the current action, as well as the second referenced action in which Wells Fargo bank and union bank are defendants (see settlement agreement transcript enclosure).

## Policy Coverage for Greka Requiring AIG to Defend and Indemnify

Coverage is compelled under Policy #8087804 for the subject of the Complaint. It covers various causes of action set forth in the Complaint, including, but not limited to Permanent Nuisance; Continuing Nuisance; Permanent Trespass; Continuing Trespass; Unjust Enrichment; Ejectment.

Additionally, the $7.1 million demanded by Vintage is "including but not limited to costs associated with plugging and abandoning wells, costs associated with any future remediation or removal of contaminated soil or groundwater, and costs associated with performing site restoration activities" (see Vintage demand letter enclosure).

Reply to Your August 26, 2008 Email and Demand for Funding of $5.0 Million and $7.1 Million Settlements
August 27, 2008
Page 4

Loss means inter-alia "monetary awards or settlements of compensatory damages . . . punitive . . . multiple . . . damages, and civil fines, penalties, or assessments for Bodily Injury or Property Damage 2. costs, charges, and expenses incurred in the defense, investigation, or adjustment of Claims for such compensatory damages or punitive, exemplary or multiple damages, and civil fines, penalties or assessments, or for Clean-Up Costs; or 3. Clean-Up Costs."

Coverage is further based on Section 1, insured properties including "Cat Canyon Field" and with coverages under policy Sections A, B, C, D, E, and F." and wells set forth in the Complaint are "covered under policy sections K and L."

Coverage is further provided under the Property Damage Provisions, including "physical injury to . . . tangible properties of the parties other than the Insured, including the resulting loss of use and diminution in value" and "loss of use" for all Coverages including Coverage C.

Coverage is further provided under the policy per Section II "Sudden and gradual pollution will be covered" including "Coverage A – On-Site Clean-Up of Pre-Existing Conditions; Coverage B – On Site Clean-Up of New Conditions; Coverage C – Third Party Claims for On-Site Bodily Injury and Property Damage; Coverage D – Third-Party Claims for Off-Site Clean-up Resulting from Pre-Existing Conditions, Coverage E – Third-Part Claims for Off-Site Clean-Up Resulting from New Conditions; Coverage F – Third Party Claims for Off-Site Bodily Injury and Property Damage; Coverage K – Cleanup Cost Cap – known pollutants; Coverage L – Cleanup Cost Cap – unknown pollutants"

Coverage is further provided under the policy under Section III for "limits" and for actions and occurrences during the "Policy Period June 26, 2002 to June 26, 2007" for subject matter of the Complaint and related actions.

Coverage is further provided under the policy under Section IV, including endorsements. For example, "Endorsement No. 2" provides that that the "Asset Sale Agreement dated May 31, 2001 between VINTAGE . . . and GREKA" is "scheduled as Insured Contracts to this Policy." This is a central agreement. For further example, the soil piles were disclosed, but others were later discovered or migration was discovered as alleged in the Complaint. Contaminated soils were

Reply to Your August 26, 2008 Email and Demand for Funding of $5.0 Million and $7.1 Million Settlements
August 27, 2008
Page 5

explicit subject of the suit, and a portion of those same soil piles and also other soil piles migrated to other locations, some on site and some offsite. This included soils not part of any remedial plan or exclusion. It is noted that the remediation plan is set forth at Endorsement 5. Furthermore, the Remediation plan was "deemed disclosed" to AIG per Endorsement #16.

It also is noted that Endorsement #13 modifies the standard paragraph B so that "the Company [AIG] hereby expressly waives any rights of subrogation against the following: Vintage." In addition, Vintage is the only additionally named insured, along with the insured Greka on the policy. The only two defendants in this litigation were Greka and Vintage. In addition, AIG is aware of the Indemnifications and Settlements of the parties.

Therefore, as a result, and for the purposes of this section only, there is identity of the insured and the additionally named insured from the perspective of the Company regarding satisfaction of insured liability.

## California Law Confirming Coverage of the CAP Environmental Policy

Greka's objectively reasonable expectation was that if it was sued for property damages and losses associated with the operations, then the insured would be defended and indemnified. The AIG policy #8087804 specifically covers the defense costs and indemnification in the Greka litigation. Endorsement 2 specifically references the transaction by and between Greka and Vintage. This policy was negotiated and bound by AIG and the insureds to cover the potential liabilities (that did in fact manifest) should the transaction result in a dispute. The Wells Fargo Bank/Union Bank lawsuit and settlement demands covered occurrences under 8087804 policy and later AIG policies as well. California law is clear that Greka is covered.

Speculating as to when or how a particular policy provision may apply in other circumstances is not the proper test. A court is required to analyze the facts presented by the specific claim (*Bay Cities Paving & Grading v. Lawyers Mut.,* 5 Cal.4th 854, 867). In that case, the named insured (Victory) sought and paid for a policy of insurance to protect itself from third party claims and to provide coverage to its employees while acting within the scope of their duties because the liability for such employees' conduct would be attributable to Victory (See *Padberg v. Travelers* (1987) 197 Cal.App.3d 1161, 1165). Victory's objectively reasonable expectation was that if it was sued by a third party as a

Reply to Your August 26, 2008 Email and Demand for Funding of $5.0 Million and $7.1 Million Settlements
August 27, 2008
Page 6

result of what an employee has done on behalf of Victory, then the employee and Victory will be defended.

Additionally, a court must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265). The policy provisions must also be construed based upon the facts presented by the subject claim and cannot be found ambiguous in the abstract (*Bay Cities Paving & Grading v. Lawyers Mut. supra*, at p. 867). "There cannot be an ambiguity per se, i.e., an ambiguity unrelated to an application" (*Id.*).

The California cases are exactly the Greka/Vintage/WFB circumstances and dispute. Moreover, the carrier confirmed the coverage in 2005 -- coverage Greka anticipated, expected and confirmed. Therefore, the defense costs and indemnity are not only reasonably expected by the insured's, the policy was specifically purchased for this exact circumstance.

### Summary of Insurance Principles Confirming AIG's Duties to Defend and Indemnify

In summary, in order to protect the objectively reasonable expectations of the insured, a court resolves ambiguities and the facts in favor of coverage, and generally interprets coverage clauses broadly. Courts construe insurance contract provisions broadly, in favor of coverage. In determining the insured's objectively reasonable expectations of coverage, the disputed policy language must be examined in context with regard to its intended function in the policy. This requires a consideration of the policy as a whole, the circumstances of the case, and common sense.

In determining Greka's reasonable expectations, the following factors must be considered:
• AIG's title of the policy is POLLUTION LEGAL LIABILITY SELECT CLEAN-UP COST CAP INSURANCE,
• The subject matter of insurance WAS CLEAN-UP COSTS and the purpose of the insured had in view at the time of contracting was to "cap" its costs,
• The business of Greka was to operate oil & gas properties and the business of AIG was to cap these liabilities so as not to threaten the assets of Greka,
• The circumstances surrounding the making of the contract was to insure against law suits and or cleanup liabilities or property damages,

Reply to Your August 26, 2008 Email and Demand for Funding of $5.0 Million and $7.1 Million Settlements
August 27, 2008
Page 7

• The situation of the insured property was central and specific to the policy and the environmental liabilities and clean-up costs and property damages,

• The intention of the insurer in 2005 was to cover the claim, and Greka relied on its reasonable expectation of coverage and AIG's promises to cover it. Now, Greka is at risk if the carrier does not fund the $5.0 million and $7.1 million settlements.

### Restatement of Insured's Demand

In any event, the various Coverages A, B, C, D, E, F, G, H, and I all include AIG's requirement to indemnify and "pay on behalf of the Insured, Loss that the Insured becomes legally obligated to pay." Such a covered loss includes the $7.1 million that Greka must pay Vintage as well as the $5 million (or $15 million) that Greka must pay Wells Fargo and Union Bank.

As previously stated in our correspondence, when a liability insurer improperly refuses to settle a third-party's claim against the insured, the insurer may be held liable for the full amount of any subsequent judgment entered against the insured, even if the judgment exceeds the policy limits (*Comunale v. Traders & Gen. Ins. Co.*, 50 Cal.2nd 654, 658). Moreover, failure to accept reasonable settlement offers will similarly subject an insurance company to an action for bad faith. (*Gruenberg v. Aetna Ins. Co.*, (1973) 9 Cal.3d 566, 573).

### Confirm AIG is Wire Transferring $5.0 Million by 1pm Today

If AIG fails to pay the $5 million required, then it, and only it will be on the hook for the entire $15 million, policy limit notwithstanding, due to the proximate nature of the damages.

Thank you for your most immediate indemnification. As always, do not hesitate to call if you have any questions or if we may be of any further assistance.

Reply to Your August 26, 2008 Email and Demand for Funding of $5.0 Million and $7.1 Million Settlements
August 27, 2008
Page 8

Sincerely,

**GARRISON LAW CORPORATION**

Gregg Garrison, R.E.A. & C.E.I.
*Licensed in California, Texas, and Washington D.C.*

Enclosures: Transcript of the Settlement Proceedings of August 20, 2008 ($5.0 Million)
Vintage Demand, Letter Dated August 22, 2008 ($7.1 Million)
AIG Acceptance of Defense, Letter Dated December 1, 2005

# EXHIBIT "11"

# GARRISON LAW CORPORATION

September 2, 2008

*Via U.S. Mail & Email*

McCurdy & Fuller
Mary McCurdy, Esq.
4300 Bohannon Drive, Suite 240
Menlo Park, CA, 94025
Telephone: (650) 618-3500
Facsimile: (650) 618-3599

| Re: | Insured: | Greka Oil & Gas, Inc. |
|-----|----------|------------------------|
| | Policy Numbers: | 808784 and related policies |
| | Claim Number: | 182-093161 and Greka 0001 to Greka 0015 |
| | Litigation: | Wells Fargo Bank et al., v. Greka et al., Santa Barbara County Superior Court Civil Action No. CIV 1155864 and related actions |
| | Subject: | Demand for Attorney's Fees for Whitwell, Jacoby, Emhoff, LLP |

Dear Mrs. McCurdy:

Thank you for your recent correspondence regarding Greka's insurance claim for attorney's and expert fees under their AIG policy that is associated with the *Wells Fargo Bank, et al. v. Vintage Petroleum* case. Pursuant to our recent teleconference and correspondence, our office has worked with AIG in good faith and has provided AIG with access to the IKON files to assist the investigation and defense of the claim made.

This letter is formal written notice of Greka's tendering of additional defense costs associated with the claim. Enclosed herewith are the attorney's fees from Whitwell, Jacoby, Emhoff LLP that have been undertaken by Greka in defense of the litigation. Greka demands immediate payment of these defense costs.

## Demand for Attorney's Fees and Defense Costs

Per your July 29th letter we have calculated the insurance rates for partners at $220 per hour, and for associates at $170 per hour. We have gone through the invoices as well to apply the insurance rates for a total of $8,973 for Whitwell, Jacoby, Emhoff, LLP.

For purposes of receiving a minimum payment to reimburse our client in the interim, we have provided you with the numbers you agreed to pay in your July 29th letter. However, we specifically reserve our right to revisit the issue of attorney's and expert fees that are covered in the policy, and do not waive any rights by agreeing to accept an immediate payment of defense costs.

These attorney fees are hereby tendered and are ready for immediate reimbursement to our office in care of the client. Please remit payment of $8,973 for these defense costs to our office immediately.


Sincerely,
**GARRISON LAW CORPORATION**

Gregg Garrison, R.E.A. & C.E.I.
*Licensed in California, Texas, and Washington D.C.*

Enclosures: Whitwell, Jacoby, Emhoff, LLP Invoice Numbers 208749, 20889, 209371, 209490, 209681, 209968, & 210314
            Updated Greka Tender Matrix



# GARRISON LAW CORPORATION

### Greka's Tender History to AIG

| Attorney & Expert Fees | Amount Invoiced | Amount Tendered[1] | Date Tendered |
|---|---|---|---|
| Valle & Associates | $298,062.08 | $168,805.50 | 6/13/08 |
| Hemming Morse Inc. | $45,531.66 | $45,531.66 | 8/14/08 |
| Engineering Partners International | $225,081.40 | $225,081.40 | 8/14/08 |
| Garrison Law Corporation | $89,552.68 | $85,493.00 | 8/14/08 |
| Sanger & Swysen | $197,094.16 | $100,876.00 | 8/15/08 |
| Richard R. Dale | $20,000.00 | $11,000.00 | 8/22/08 |
| Arent Fox, LLP | $14,351.31 | $6,981.00 | 8/22/08 |
| Whitwell, Jacoby, Emhoff, LLP | $120,702.21 | $67,852.00 | 8/25/08 |
| Hatch & Parent | $395,525.78 | $182,244.00 | 8/25/08 |
| | | | |
| | Total= $1,405,901.28 | Total= $893,386.56 | |

Last Updated: September 2, 2008

---

[1]AIG accepted the coverage for defense costs in 2005.  After the acceptance of the coverage, and *after the tender of defense costs*, AIG then requested reduced fees.

For purposes of receiving a minimum payment to reimburse our client immediately, we have provided you with the numbers listed.  We specifically reserve our right to revisit the issue of attorney's and expert fees that are covered in the policy, and do not waive any rights by agreeing to accept an immediate payment of defense costs.

# EXHIBIT "12"

# GARRISON LAW CORPORATION

September 5, 2008

*Via U.S. Mail & Facsimile*

McCurdy & Fuller
Mary McCurdy, Esq.
4300 Bohannon Drive, Suite 240
Menlo Park, CA, 94025
Telephone: (650) 618-3500
Facsimile: (650) 618-3599

Re:    Insured:            Greka Oil & Gas, Inc.
       Policy Numbers:     808784 and related policies
       Claim Number:       182-093161 and Greka 0001 to Greka 0015
       Litigation:         Wells Fargo Bank et al., v. Greka et al., Santa Barbara County
                           Superior Court Civil Action No. CIV 1155864
       Subject:            Hemming Morse, Inc. Invoice Payment

Dear Mrs. McCurdy:

Thank you for your recent correspondence regarding Greka's insurance claim for attorney's and expert fees under their AIG policy that is associated with the *Wells Fargo Bank, et al. v. Vintage Petroleum* case.

Your September 2, 2008 email requested "as to the Hemming Morse invoice, please have Hemming submit an invoice that details the work done by Hemming, on an hourly basis . . . Please have Hemming submit a breakdown of how Mr. John's time was spent in arriving at the 90.5, on an hourly basis, as well as for the other individuals that worked on the file."

Pursuant to your request our office contacted Hemming Morse, Inc. and has enclosed the revised hourly basis invoices. These are to be paid immediately.

These expert fees have already been tendered and are ready for immediate reimbursement to our office in care of the client. Please remit payment of $60,879.17 for these defense costs immediately.

Please make payment to "Garrison Law Corporation and Greka Oil & Gas, Inc." Please overnight payment to our offices, which is located at 1525 State Street, Suite 100, Santa Barbara, CA, 93101. Our EIN number is 94-3149374.

The other response from Engineering Partners is being completed and will be provided to you shortly.  Thank you.


Sincerely,
**GARRISON LAW CORPORATION**

Gregg Garrison, R.E.A. & C.E.I.
*Licensed in California, Texas, and Washington D.C.*


Enclosures: Updated AIG Tender Matrix, September 5, 2008



# GARRISON LAW CORPORATION

## Greka's Tender History to AIG

| Attorney & Expert Fees | Amount Invoiced | Amount Tendered[1] | Date Tendered |
|---|---|---|---|
| Valle & Associates | $298,062.08 | $168,805.50 | 6/13/08 |
| Hemming Morse Inc. | $62,619.17 | $62,619.17 | 8/14/08 |
| Engineering Partners International | $225,081.40 | $225,081.40 | 8/14/08 |
| Garrison Law Corporation | $89,552.68 | $85,493.00 | 8/14/08 |
| Sanger & Swysen | $197,094.16 | $100,876.00 | 8/15/08 |
| Richard R. Dale | $20,000.00 | $11,000.00 | 8/22/08 |
| Arent Fox, LLP | $14,351.31 | $6,981.00 | 8/22/08 |
| Whitwell, Jacoby, Emhoff, LLP | $120,702.21 | $67,852.00 | 8/25/08 |
| Hatch & Parent | $395,525.78 | $182,244.00 | 8/25/08 |
| | | | |
| | Total= $1,422,988.79 | Total= $910,474.07 | |

Last Updated: September 5, 2008

---

[1]AIG accepted the coverage for defense costs in 2005. After the acceptance of the coverage, and *after the tender of defense costs*, AIG then requested reduced fees.

For purposes of receiving a minimum payment to reimburse our client immediately, we have provided you with the numbers listed. We specifically reserve our right to revisit the issue of attorney's and expert fees that are covered in the policy, and do not waive any rights by agreeing to accept an immediate payment of defense costs.

Plaza Linda Vista
Suite 100 • 1525 State Street • Santa Barbara, California 93101
Phone (805) 957-1700 • Fax (805) 957-1709

# EXHIBIT "13"

# GARRISON LAW CORPORATION

*Via U.S. Mail & Email*

November 25, 2008

Ms. Aimee Tersy
AIG Domestic Claims, Inc.
High Profile Claims Department
101 Hudson Street, 31ˢᵗ Floor
Jersey City, NJ, 07302
Telephone: (201) 631-7187
Facsimile: (866) 743-3693
Email: aimee.tersy@aig.com

| | | |
|---|---|---|
| Re: | Insureds: | Greka Oil & Gas, Inc. & Vintage Petroleum, Inc. |
| | Policy Numbers: | 808784 and related policies |
| | Claim Number: | 182-077155 and Greka 0008 |
| | Litigation: | *Basin Partners;* Santa Barbara County Superior Court Civil Action No. CIV 1171565 and related actions |
| | Subject: | Documentation for Attorney's Fees for Whitwell, Jacoby, Emhoff, LLP and Hatch & Parent |

Dear Ms. Tersy:

Thank you for taking the time to discuss the above referenced file. Enclosed herewith are the attorney fees from Whitwell, Jacoby, Emhoff, LLP and Hatch & Parent paid by Greka Oil & Gas, Inc. ("Greka") on behalf of Vintage Petroleum, Inc. ("Vintage") in the defense of the Basin Partners' complaint.

Enclosed herewith is the Engagement Agreement dated April 13, 2005 wherein Greka paid for the defense of Vintage in the *Basin Partners* litigation. See paragraph one of the Agreement. Please see the enclosed invoices and payments made by Greka.

Greka and Vintage successfully coordinated a joint defense that resulted in a settlement with the Plaintiffs. See paragraph one of the enclosed Settlement Agreement dated November 15, 2006.

Letter to Ms. Tersy
November 25, 2008
Page 2

### Documentation for Attorney's Fees and Defense Costs

We have calculated the insurance rates for partners at $220 per hour, and for associates at $170 per hour. We have gone through the invoices as well to apply the insurance rates for a total of $58,879 for Whitwell, Jacoby, Emhoff, LLP, and $182,244 for Hatch & Parent. Please remit payment of $241,123 for these defense costs to our office.

Please make payment to Garrison Law Corporation and Greka Oil & Gas, Inc. Please overnight payment to our offices, which are located at 1525 State Street, Suite 100, Santa Barbara, CA, 93101. Our firms EIN number is 94-3149374.

### Time is of the Essence

Insurance coverage under the above-referenced policies has had multiple claims against it. Therefore, please make payment from the policies as soon as possible.

Sincerely,
**GARRISON LAW CORPORATION**

*ameld Beli*
*for*

Gregg Garrison, R.E.A. & C.E.I.
*Licensed in California, Texas, New York, and District of Columbia*

Enclosures:    Whitwell, Jacoby, Emhoff, LLP Invoices
Hatch & Parent Invoices
Whitwell Engagement Agreement to Vintage and Greka, Dated April 13, 2005
Vintage Petroleum, Basin Partners, and Greka Settlement Agreement, Dated November 15, 2006

EXHIBIT "14"

# GARRISON LAW CORPORATION

*Via U.S. Mail, Facsimile & Email*

December 22, 2008

Gregory Lahr, Esq.
Sedgwick, Detert, Moran & Arnold, LLP
125 Broad Street, 39th Floor
New York, NY 10004
Phone: (212) 898-4014
Facsimile: (212) 422-0925

Zachary M. Barth
AIG Domestic Claims, Inc.
175 Water Street, 12th Floor
New York, NY, 10038
Phone: (212) 458-3484
Facsimile: (866) 254-7193

Re:  Insured/Our Client:  Greka Oil & Gas, Inc.
     Additional Insured:  Vintage Petroleum, Inc.
     Claimants:  Wells Fargo Bank, N.A., Basin Partners, SBFD & EPA
     Issuing Company:  American International Specialty Lines Insurance Company
     Policy Numbers:  8087804
     Claim Number:  182-093161 and Greka 0001 to Greka 0015
     Underlying Actions:  Wells Fargo Bank, N.A. v. Vintage Petroleum, Inc., Santa Barbara County Superior Court Case No. 1155864
     Basin Partners v. Greka Oil & Gas, Inc., Santa Barbara County Superior Court Case No. 1171565

     Subject:  AISLIC'S Violations of California Law – Immediate Remedy Required

Dear Mr. Lahr and Mr. Barth:

This letter is written in response to Mr. Lahr's October 30, 2008 email and Mr. Barth's November 13, 2008 email to Mr. Gregg Perkin of Engineering Partners International, Inc. (EPI). You both advised the retained expert Mr. Perkin that "AISLIC has . . . no contractual obligation to EPI" and "it is our view that EPI's invoices are not covered by the AISLIC Policy."

AISLIC accepted defense of this matter on December 5, 2005, and re-affirmed on November 13, 2008. AISLIC cannot pick and choose which necessary defense costs it pays once it accepts

Plaza Linda Vista
Suite 100   1525 State Street   Santa Barbara, California 93101
*Phone* (805) 957-1700   *Fax* (805) 957-1709
glc@garrisonlawcorp.com

defense.   Your position now to pick and choose what defense costs to pay is contrary to your prior acceptance of defense and contrary to long settled law.

This discrepancy is glaring and basic.   We note that neither of you are licensed to practice law in California.   Therefore, you both appear to be attempting to practice law in California without a license.

Similarly, please explain why this matter has not been reviewed by any coverage counsel or attorney licensed in the State of California.   This matter involves plaintiffs and defendants in California in a California Court regarding real property, air and water in California.   Your coverage decisions purport to apply California law.   AISLIC's failure to have this matter reviewed by counsel licensed in California increases the appearance that this claim is being handled in less than good faith.

Again, your opinions are inconsistent with the acceptance of coverage under the policy and with settled California case law as detailed below.   The only remedy for same is immediate payment of the properly tendered and necessary defense costs.

### AISLIC's Duty to Defend

The law regarding an insurer's duty to defend is settled in California: the coverage provisions of the policy are liberally construed in favor of the insured and the exclusions from coverage are narrowly construed against the insurer (*Mitroff v. United Services Auto. Ass'n* (1999) 72 Cal.App.4th 1230, 1238). An insurer may refuse to defend a third party claim only where the claim can "by no conceivable theory raise a single issue which could bring it within the policy coverage" (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300).

Moreover, "if a single issue exists which is even potentially within the policy coverage, [the insurer] has a duty to defend . . . [the] action in its entirety" (*Charles E. Thomas Co. v. Transam. Ins. Group*, (1998) 62 Cal.App.4th 379, 382; *Buss v. Super. Ct.* (1997) 16 Cal.4th 35, 48).   The insurer must defend, even against claims that create only a potential for recovery (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275).

Additionally, and most importantly to the issues in this case, "once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and

Letter to Greg Lahr and Zachary Barth
December 22, 2008
Page 3

noncovered" *(Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081; *Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 564).

### AISLIC 8087804 Policy Language Covering Experts

Under Coverage C of the policy, legal expense and defense are covered. Under the policy "LOSS" is defined as the "costs, charges, and expenses incurred in the defense of investigation, or adjustment of claims." On December 1, 2005 (see enclosure) AISLIC confirmed, in writing, its duty to defend Greka Oil & Gas, Inc. Based on the experts retained by Greka Oil & Gas, Inc. for its defense in this matter, AISLIC has the absolute duty to defend under this section of the policy, as well as under settled California case law, and must make payment on the tendered claim.

### AISLIC Has a Duty to Defend All Claims, Both Covered and Noncovered

AISLIC stated on December 5, 2005 that it has accepted the defense in the Wells Fargo matter. This was re-affirmed by Mr. Barth's November 13, 2008 email wherein he states, "AISLIC accepted defense of Greka Oil in the action entitled Wells Fargo Bank, N.A., et al. v. Vintage Petroleum, Inc., et al. . . . subject to a reservation of rights."

Once AISLIC accepted the defense of its insured, Greka Oil & Gas, Inc., it was bound under well settled California case law to defend against all of the claims covered in the *Wells Fargo* matter, both covered and noncovered. AISLIC has already paid Greka Oil & Gas, Inc. defense costs in the *Wells Fargo* matter, and cannot now refuse to pay valid defense costs. AISLIC has already paid Vintage Petroleum, Inc.'s defense costs as well in the *Wells Fargo* and *Basin Partners* matters.

### Partial Defense Not Allowed in California

Once a defense is tendered, the carrier is obligated to pay the entire amount *(Horace Mann Ins. Co. v. Barbara B., supra,* at p. 1081; *Hogan v. Midland National Ins. Co., supra,* at p. 564). In other words, a partial defense is no defense at all. AISLIC has already accepted and paid legal defense costs under this policy in both the *Wells Fargo* and *Basin Partners* matters. The instant expert fees are undisputed.

In the *Wells Fargo* complaint, causes of action numbered four, five, six, and seven dealt with continuing and permanent nuisance, as well as continuing and permanent and trespass, and

Letter to Greg Lahr and Zachary Barth
December 22, 2008
Page 4

discussed "environmental contaminants [being] released." Greka Oil & Gas, Inc., Wells Fargo, and Vintage Petroleum, Inc. all disclosed their experts and witnesses to defend these causes of action. Specifically, Greka Oil & Gas, Inc.'s experts Gregg Perkin and Colin Johns were hired to, among other tasks, review the environmental elements of the claims from both Plaintiff's and co-defendants (see enclosed October 1, 2008 letter to defense counsel Mary McCurdy). Inclusive of the environmental claims analysis is expert assistance regarding regulatory directives, regulations, prudent oil and gas operations, costs associated with compliance, non-compliance and analysis of the alleged environmental damages (see complaint). These tasks are legitimate defense costs and must be reimbursed by the carrier, as the policy is an environmental clean-up policy.

### Conclusion

AISLIC accepted defense of the matter in 2005. You then wrongfully attempt to pick and choose which defense bills you are going to pay when you refused to pay the Perkin and Johns expert witness invoices. You did this without using California coverage counsel. This was a decision made in glaring violation of California law. This was apparently because you were practicing law in California without a license.

AISLIC has a duty to reimburse Mr. Gregg Perkin of EPI, as well as Mr. Colin Johns of Hemming Morse, Inc., for the valid defense costs that have been previously tendered. Please remit payment for the outstanding balances immediately (see invoice enclosures).

Please overnight payment to our offices, which is located at 1525 State Street, Suite 100, Santa Barbara, CA, 93101. Our EIN number is 94-3149374. Thank you in advance for your cooperation in this matter without further delay.

Sincerely,
**GARRISON LAW CORPORATION**

Gregg Garrison, R.E.A. & C.E.I.
*Licensed in California, Texas, New York, and District of Columbia*

Letter to Greg Lahr and Zachary Barth
December 22, 2008
Page 5

Enclosures:    Gregory Lahr Email to Gregg Perkin, dated October 30, 2008
Zachary Barth Email to Gregg Perkin, dated November 13, 2008
Letter to Mary McCurdy, dated October 1, 2008
AIG Acceptance of Defense Letter, dated December 1, 2005
Engineering Partners International, Inc. Invoices
Hemming Morse, Inc. Invoices

cc:    Gregg Perkin, Engineering Partners International, Inc.
Colin Johns, Hemming Morse, Inc.
Steve Poizner, California Insurance Commissioner

EXHIBIT "15"



'08 CIV 7591

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE COMPANY,

           Plaintiff,

      -against -

GREKA OIL & GAS, INC. and
VINTAGE PETROLEUM, INC.,

           Defendants,

-------------------------------------------------------x

JURY TRIAL DEMANDED

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, American International Specialty Lines Insurance Company ("AISLIC"), by and through its attorneys, Sedgwick, Detert, Moran & Arnold LLP, as and for its Complaint against Defendants, Greka Oil & Gas, Inc. ("Greka Oil") and Vintage Petroleum, Inc. ("Vintage Petroleum") (collectively referred to as "Defendants"), alleges upon knowledge as to its own acts and upon information and belief as to the acts of others, as follows:

## NATURE OF THE ACTION

1.    This action seeks a declaratory judgment with respect to Pollution Legal Liability Select Clean-Up Cost Cap Insurance Policy No. 8087804 (the "AISLIC Policy") issued by AISLIC to Greka Energy Corporation ("Greka Energy") (n/k/a Greka Oil) for the period June 26, 2002 to June 26, 2007 (the "Policy Period").

2.    AISLIC issued the AISLIC Policy to Greka Oil. The AISLIC Policy listed the address of Greka Oil as 630 5th Avenue, Suite 501, New York, New York.

3.    The AISLIC Policy provided coverage for the clean up of pre-existing and/or new pollution conditions on certain insured properties listed in the Policy, and indemnity for property damage resulting from pollution conditions on or under those properties.

4.    On or about August 5, 2004, Greka Oil and Vintage Petroleum were sued in an action entitled <u>Wells Fargo Bank, N.A. v. Vintage Petroleum, Inc.</u>, pending in the Superior Court of California, County of Santa Barbara, Case No. 1155864 ("Underlying Action").

5.    The Underlying Action arises out of oil and gas leases to which the underlying plaintiffs and Greka Oil and/or Vintage Petroleum were parties. The underlying plaintiffs have sought damages and other relief associated with alleged environmental contamination on the property subject to the oil and gas leases, and confirmation of the termination of the oil and gas leases for alleged failure to remedy defaults under the leases, including the alleged failure to remediate environmental contamination.

6.    An actual and ripe controversy exists concerning the parties' rights and obligations under the AISLIC Policy as it pertains to the Underlying Action.

7.    AISLIC now seeks a declaration holding that the AISLIC Policy should be rescinded or, alternatively, does not provide coverage for the claims asserted in the Underlying Action.

## PARTIES

8.    AISLIC is a corporation organized and existing under the laws of Illinois, with a principal place of business located in New York, New York. AISLIC is engaged in the business of providing liability insurance.

9.    Upon information and belief, Greka Oil is a corporation organized and existing under the laws of Colorado, with a principal place of business in Santa Maria, California, and is

the successor-in-interest of Greka Energy. Greka Oil is engaged in the business of oil and gas production, exploration, and development.

10.    Upon information and belief, Vintage Petroleum is a corporation organized and existing under the laws of Delaware, with a principal place of business located in Tulsa, Oklahoma. Vintage Petroleum is engaged in the acquisition, exploration, and exploitation of oil and gas properties and the marketing of natural gas and crude oil.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

12.    This Court has personal jurisdiction over Greka Oil because it entered into an insurance contract with AISLIC in New York.

13.    This Court has personal jurisdiction over Vintage Petroleum because, upon information and belief, it does substantial business in the City, County, and State of New York.

## FACTUAL ALLEGATIONS

### *The Disputes In The Underlying Action*

14.    In the Underlying Action, the purported Insured Property at issue has been referred to as the "Cat Canyon Property."

15.    As alleged in the Underlying Action, Wells Fargo Bank, N.A. ("Wells Fargo") and Union Bank of California, N.A. ("Union Bank") are the Trustees of the mineral and surface estate of the Cat Canyon Property.

16.    On or about December 1, 1988, the Trustees allegedly entered into three oil and gas leases with Shell Western E&P, Inc. ("SWEPI") pertaining to the Cat Canyon Property.

17.     As allegedly set forth in the leases – referred to in the Underlying Action as the New United California Lease, the New Bradley Lease, and the New California Lease (the "Cat Canyon Leases") – the lessee was prohibited from assigning the Cat Canyon Leases or any interest therein without the consent of the lessors, *i.e*, the Trustees.

18.     In 1992, SWEPI allegedly assigned its interest in the Cat Canyon Leases to Vintage Petroleum.

19.     The Trustees allegedly signed a written consent to assign the Cat Canyon Leases from SWEPI to Vintage Petroleum.

20.     From 1998 through 2001, Wells Fargo allegedly served as a co-trustee-lessor with respect to certain other oil and gas leases not involving the Cat Canyon Property, in which the lessee was a predecessor company of Greka Oil. According to Wells Fargo, it experienced numerous problems in collecting royalty payments under those other oil and gas leases from the Greka Oil predecessor during that time period.

21.     In 1999, Vintage Petroleum allegedly sought the consent of the Trustees to assign the Cat Canyon Leases to Greka Oil.

22.     Wells Fargo allegedly refused to consent to the assignment of the Cat Canyon Leases to Greka Oil.

23.     In May 2001, Vintage Petroleum allegedly again sought the consent of the Trustees to assign the Cat Canyon Leases to Greka Oil.

24.     In June 2001, Union Bank allegedly consented to the assignment of the Cat Canyon Leases to Greka Oil.

25.     In or about June 2001, Wells Fargo allegedly declined to consent to the assignment of the Cat Canyon Leases to Greka Oil because: (a) of its prior experience with

Greka Oil in attempting to collect royalty payments; and (b) the income from the Cat Canyon Leases would not cover the cost of plugging abandoned oil wells and performing environmental clean up.

26.    On or about July 1, 2002, Greka Oil allegedly obtained possession of the Cat Canyon Leases without the consent of Wells Fargo.

27.    On or about July 15, 2002, Vintage Petroleum allegedly assigned the Cat Canyon Leases to Greka Oil.

28.    The assignment of the Cat Canyon Leases allegedly included an agreement whereby Greka Oil would indemnify Vintage Petroleum for any claim based upon a failure to obtain consents to the Lease assignment. Greka Oil also allegedly agreed to assume the clean-up operations at the Cat Canyon Property, which costs have since been estimated to be approximately $60 million.

29.    In October 2002, the Trustees allegedly issued a Notice of Default indicating that the assignment of the Cat Canyon Leases to Greka Oil constituted a default of the Leases.

30.    In March 2003, the Trustees allegedly issued a Notice of Termination of the Cat Canyon Leases due to the improper assignment to Greka Oil.

### The AISLIC Policy

31.    Greka Oil applied for the AISLIC Policy by completing a Pollution Legal Liability Application (the "Pollution Application") and a Cleanup Cost Cap Insurance Application (the "Cleanup Application") dated December 19, 2001.

32.    In the Pollution Application, Greka Oil responded "No" to an inquiry requesting whether Greka Oil knew of any facts or circumstances which may reasonably be expected to result in a claim or claims being asserted against it for environmental cleanup or response.

33.    In the Pollution Application, Greka Oil represented that the responses in the application were true and that no material facts were suppressed or misstated.

34.    Upon information and belief, Greka Oil was aware of environmental contamination on the Cat Canyon Property at the time it completed the Pollution Application, and knew that this contamination could reasonably give rise to a Claim that would fall within the scope of the AISLIC Policy.

35.    The AISLIC Policy had an inception date of June 26, 2002.

36.    The AISLIC Policy was issued to Greka Oil as the Named Insured.

37.    Pursuant to the "Schedule of Insured Properties, Coverages, and Coverage Section Limits and Deductibles Endorsement" of the AISLIC Policy, the list of Insured Properties included, *inter alia*, a reference to "Cat Canyon Field," which for purposes of this Complaint means the Cat Canyon Property.

38.    Pursuant to Endorsement No. 2 of the AISLIC Policy, entitled "Additional Insured(s) Endorsement," Vintage Petroleum was added as an additional insured under Coverages A through F of the Policy, but only in connection with claims in which: (a) Vintage Petroleum's alleged liability arose out of Greka Oil's ownership, operation, maintenance, or use of the Insured Properties; and (b) Vintage Petroleum was named as a co-defendant with Greka Oil in a suit alleging that Vintage Petroleum was liable for Greka Oil's ownership, operation, maintenance, or use of the Insured Properties.

39.    The AISLIC Policy contained insuring agreements consisting of Coverages A to L, as set forth below.

40.    Pursuant to Coverage A of the AISLIC Policy, entitled "On-Site Clean-Up of Pre-Existing Conditions," AISLIC agreed to pay on behalf of the Defendants herein those clean-up

costs which resulted from pollution conditions on or under the Cat Canyon Property that had commenced prior to the June 26, 2002 inception date of the Policy, but only if, *inter alia*, such pollution conditions were discovered by the Defendants herein during the Policy Period.

41.    Also under Coverage A, AISLIC agreed to pay on behalf of the Defendants herein those indemnity and defense expenses that they became legally obligated to pay as a result of claims for clean-up costs resulting from pollution conditions on or under the Cat Canyon Property that had commenced prior to the June 26, 2002 inception date of the Policy, provided that such claims were first made against them during the Policy Period.

42.    Pursuant to Coverage B of the AISLIC Policy, entitled "On-Site Clean-Up of New Conditions," AISLIC agreed to pay on behalf of the Defendants herein those clean-up costs resulting from pollution conditions on or under the Cat Canyon Property that had commenced on or after the June 26, 2002 inception date of the Policy, but only if, *inter alia*, such pollution conditions were discovered by them during the Policy Period.

43.    Also under Coverage B, AISLIC agreed to pay on behalf of the Defendants herein those indemnity and defense expenses that they became legally obligated to pay as a result of claims for clean-up costs resulting from pollution conditions on or under the Cat Canyon Property that had commenced on or after the June 26, 2002 inception date of the Policy, provided that such claims were first made against them during the Policy Period.

44.    Pursuant to Coverage C of the AISLIC Policy, entitled "Third-Party Claims for On-Site Bodily Injury and Property Damage," AISLIC agreed to pay on behalf of the Defendants herein those indemnity and defense expenses that they became legally obligated to pay as a result of claims for bodily injury or property damage resulting from pollution conditions on or under

the Cat Canyon Property, provided that such bodily injury or property damage took place while the person injured or property damaged was on the Cat Canyon Property.

45.    Coverages D, E, and F of the AISLIC Policy are not applicable as they pertain to claims for off-site clean-up costs and property damage which, upon information and belief, are not at issue in the Underlying Action. Furthermore, Coverages G, H, 1, and J of the AISLIC Policy are not applicable because they were not purchased from AISLIC by Greka Oil.

46.    Pursuant to Coverage K of the AISLIC Policy, entitled "Known Pollutants," AISLIC agreed to pay on behalf of Greka Oil those costs in excess of the $1,198,400 self-insured retention that Greka Oil incurred for the clean up of pollutants identified in the "Remedial Plan," which was defined in the Policy as: (a) the "Environmental Schedule" dated July 9, 2001; and/or (b) the e-mail entitled "Well [Abandonment] Program" dated August 2, 2001.

47.    Pursuant to Coverage L of the AISLIC Policy, entitled "Unknown Pollutants," AISLIC agreed to pay on behalf of Greka Oil those costs in excess of the $1,198,400 self-insured retention that Greka Oil incurred for the clean up of pollutants different from those identified in the "Remedial Plan," provided that, *inter alia*: (a) the pollutants were first discovered pursuant to the execution of the "Remedial Plan;" (b) the pollutants originated from the Cat Canyon Property; and (c) the clean up occurred between the June 26, 2002 inception date and the June 26, 2007 end date of the Policy.

48.    The AISLIC Policy contained several exclusions of coverage, as set forth below.

49.    The AISLIC Policy did not provide coverage for costs or exposures arising from pollution conditions or pollutants arising out of Greka Oil's intentional, willful, or deliberate noncompliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency.

50.    The AISLIC Policy did not provide coverage for costs or exposures arising out of pollution conditions or pollutants existing prior to the June 26, 2002 inception date, and known by Greka Oil and not disclosed in the application for the Policy.

51.    The AISLIC Policy did not provide coverage for costs or exposures arising out of treatment or disposal of pollution conditions that constituted hazardous waste (as defined by Code of Federal Regulations Title 40, Sections 260 through 265), which were contained in the soil, groundwater, surface water, and/or air at the Cat Canyon Property.

52.    The AISLIC Policy did not provide coverage for costs arising out of pollution conditions on or under the Cat Canyon Property if such pollution conditions were identified or characterized in any environmental report, assessment, or due diligence document, and were not identified in: (a) the "Environmental Schedule" dated July 9, 2001; and/or (b) the e-mail entitled "Well [Abandonment] Program" dated August 2, 2001.

53.    The AISLIC Policy did not provide coverage for costs due to or arising from decommissioning and disposal of oilfield-related equipment, such as, but not limited to, pumping equipment, pipelines, concrete pads, tanks, gas plants, and/or concrete.

54.    The AISLIC Policy contained several conditions of coverage, as set forth below.

55.    The AISLIC Policy required that the Defendants herein cooperate with AISLIC and provide all reasonable assistance in the investigation and defense of claims or the evaluation of clean-up costs.

56.    The AISLIC Policy provided that it would be void as of its June 26, 2002 inception if Greka Oil willfully concealed or misrepresented any fact or circumstance which was material to the granting of coverage under the Policy, the description of the Cat Canyon Property, or the interest of the Defendants therein.

57.    The AISLIC Policy provided that AISLIC could cancel the Policy due to: (a) any material misrepresentation by the Defendants herein; (b) Defendants' failure to comply with the material terms, conditions, or contractual obligations under the Policy; and/or (c) a change in operations at the Cat Canyon Property during the Policy Period which materially increased the risk covered under the Policy.

58.    By accepting the AISLIC Policy, Greka Oil agreed that: (a) the statements made in the declarations, application, and report/worksheet constituted its own agreements and representations; (b) the Policy had been issued in reliance upon the truth of such representations; and (c) the Policy embodied all agreements existing between the Defendants and AISLIC.

59.    Due to the limited information provided by the Defendants herein to AISLIC, it cannot yet be determined whether other terms, conditions, limitations, and/or exclusions of the AISLIC Policy may be implicated by the allegations set forth in the Underlying Action and, therefore, AISLIC reserves the right to assert such additional terms, conditions, limitations, and/or exclusions based upon facts ascertained through discovery, all of which are specifically reserved by AISLIC along with any and all other rights, remedies, and defenses under the AISLIC Policy and at law.

*The Trustees' Claims Against The*
*Defendants In The Underlying Action*

60.    As set forth in the complaint in the Underlying Action, the Trustees sought: (a) damages and other relief associated with environmental contamination on the Cat Canyon Property; and (b) termination of the Cat Canyon Leases for failure to remedy several defaults under the Leases, including the failure to remediate the environmental contamination.

61.    The Trustees' complaint alleged that the 2001 assignment of the Cat Canyon Leases from Vintage Petroleum to Greka Oil constituted a default and material breach of the Cat Canyon Leases because the Trustees did not consent to the assignment.

62.    The Trustees further alleged that Greka Oil's possession of the Cat Canyon Property and operations on the Property are without the Trustees' consent, and in defiance of the demand of the Trustees that Greka Oil cease its trespass on the Trustees' property and its conversion of the Trustees' oil and gas.

63.    Furthermore, the Trustees alleged that Greka Oil has converted an existing oil field office on the Cat Canyon Property to its own use as a corporate office, supporting unrelated operations having nothing to do with the property. According to the Trustees, this excess use constitutes a further breach of the Cat Canyon Leases.

64.    The Trustees claimed that there exists contaminated soil on the Cat Canyon Property in violation of laws prohibiting the discharge of petroleum, petroleum products, hazardous substances, and industrial wastes, and that the discharges of these substances on the Cat Canyon Property were unlawful at the time the discharges occurred.

65.    In the first three causes of action asserted in the Trustees' complaint, they allege that Vintage Petroleum breached the Cat Canyon Leases.

66.    In their fourth cause of action, the Trustees claimed that the Defendants herein had created a permanent misuse on the Cat Canyon Property by: (a) wrongfully causing environmental contaminants to be released, discharged, or maintained on, within, or under the Cat Canyon Property; and (b) wrongfully allowing the continued existence of oil and gas wells, pipelines and flow lines, facilities, foundations, oil field debris and junk, and other dangerous conditions. The Trustees contended that this wrongdoing interfered with the free use and

comfortable enjoyment of the land, thereby causing damage to the Trustees in that they will need to incur costs to assess, evaluate, and test the conditions resulting from the permanent nuisance and to repair and restore the Cat Canyon Property to its original condition.

67.     The fifth cause of action alleged by the Trustees against the Defendants herein repeated and realleged the fourth cause of action, and further alleged that the conduct constituted a continuing nuisance.

68.     In the sixth and seventh causes of action, the Trustees repeated and realleged the above-referenced nuisance claims, and further contended that the conduct constituted a permanent trespass (sixth) and continuing trespass (seventh).

69.     The Trustees alleged in the eighth cause of action that Greka Oil had conducted drilling operations on the Cat Canyon Property and removed oil and gas without the consent of the Trustees, thereby giving rise to a wrongful conversion for which the Defendants are liable.

70.     The Trustees repeated and realleged the above-referenced conversion claim in the ninth cause of action of their complaint, and contended that the misconduct of the Defendants herein had reduced the value of the Cat Canyon Property and deprived the Trustees of the value of the converted oil and gas, thereby giving rise to a waste on the Property, for which the Defendants are liable.

71.     In the tenth cause of action, the Trustees alleged that the Cat Canyon Leases had been terminated and Defendants herein had no right to extract oil or gas from the Cat Canyon Property. In so alleging, the Trustees further contended that because the Defendants herein had wrongfully occupied and operated on the Property, they had become unjustly enriched, and should therefore have to pay to the Trustees the value of their wrongful occupation and extraction.

72.   The Trustees alleged in the eleventh cause of action that Greka Oil should be ejected from the Cat Canyon Property and that the Trustees are entitled to exclusive possession of the Property.

73.   In the twelfth, thirteenth, and fourteenth causes of action, the Trustees have sought declaratory relief against the Defendants herein, declaring that: (a) the purported 2001 assignment to Greka Oil had no force and effect because the Trustees did not consent to it; (b) the Cat Canyon Leases are terminated as a result of the default of the Leases; and (c) the Defendants herein had no right to occupy or operate on the Cat Canyon Property (with the exception of Vintage Oil with respect to its obligations to restore the Property upon termination of the Leases).

## FIRST COUNT

74.   AISLIC incorporates by reference each of the allegations of paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.   Upon information and belief, Greka Oil failed to disclose the environmental contamination that existed on the Cat Canyon Property to AISLIC at any time prior to the effective date of the AISLIC Policy

76.   Greka Oil's failure to disclose the environmental contamination that existed on the Cat Canyon Property to AISLIC constituted a misrepresentation and/or non-disclosure of a material fact relating to the risk(s) which AISLIC was to insure.

77.   If Greka Oil had disclosed the environment contamination to AISLIC prior to the inception of the AISLIC Policy, AISLIC would not have issued the AISLIC Policy.

78.    Because of Greka Oil's misrepresentation and/or non-disclosure of this material fact, which induced AISLIC to issue the AISLIC Policy, AISLIC is entitled to rescind the AISLIC Policy *ab initio*.

79.    Accordingly, AISLIC is entitled to a declaration that (a) it is entitled to rescind the AISLIC Policy, (b) the AISLIC Policy is null and void *ab initio*, and (c) it has no obligation to provide coverage for the Underlying Action, and/or any other Claims made during the Policy Period.

## SECOND COUNT

80.    AISLIC incorporates by reference each of the allegations of paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.    The causes of action alleged in the complaint in the Underlying Action are not covered under Coverages A through L of the AISLIC Policy.

82.    AISLIC is entitled to a declaration that the AISLIC Policy does not provide coverage for the causes of action alleged in the Complaint in the Underlying Action.

## THIRD COUNT

83.    AISLIC incorporates by reference each of the allegations of paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.    The causes of action alleged in the complaint in the Underlying Action are precluded from coverage by the applicable exclusions contained in the AISLIC Policy.

85.    AISLIC is entitled to a declaration that the AISLIC Policy precludes coverage for the causes of action alleged in the Complaint in the Underlying Action.

## FOURTH COUNT

86. AISLIC incorporates by reference each of the allegations of paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87. The causes of action alleged in the complaint in the Underlying Action are not covered due to the breach or violation of the conditions and limitations set forth in the AISLIC Policy by Greka Oil and/or Vintage Petroleum.

88. AISLIC is entitled to a declaration that the AISLIC Policy does not provide coverage for the causes of action alleged in the Complaint in the Underlying Action due to the breach or violation of the conditions and limitations set forth in the AISLIC Policy by Greka Oil and/or Vintage Petroleum.

## FIFTH COUNT

89. AISLIC incorporates by reference each of the allegations of paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90. The causes of action alleged in the complaint in the Underlying Action are precluded from coverage under applicable law and public policy.

91. AISLIC is entitled to a declaration that applicable law and public policy precludes coverage for the causes of action alleged in the complaint in the Underlying Action.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a declaration and judgment in its favor:

A. Declaring that, for the reasons set forth in Count I, the AISLIC Policy is void *ab initio*, subject to the return of premium if required;

B. Declaring that, for the reasons set forth in Count II, insurance coverage is not available under the AISLIC Policy for any causes of action alleged against Greka Oil and/or

Vintage Petroleum in the complaint in the Underlying Action;

C.    Declaring that, for the reasons set forth in Count III, insurance coverage is not available under the AISLIC Policy for any causes of action alleged against Greka Oil and/or Vintage Petroleum in the complaint in the Underlying Action;

D.    Declaring that, for the reasons set forth in Count IV, insurance coverage is not available under the AISLIC Policy for any causes of action alleged against Greka Oil and/or Vintage Petroleum in the complaint in the Underlying Action;

E.    Declaring that, for the reasons set forth in Count V, insurance coverage is not available under the AISLIC Policy for any causes of action alleged against Greka Oil and/or Vintage Petroleum in the complaint in the Underlying Action;

F.    Awarding AISLIC such additional declaratory and other relief as shall be found to be appropriate under the circumstances; and

G.    Awarding AISLIC its fees and costs incurred in prosecuting this action.

Dated: New York, New York
      August 27, 2008

              SEDGWICK, DETERT, MORAN & ARNOLD, LLP

              Lawrence Klein  (LK2875)
              Jeffrey Winn  (JW6071)
              J. Gregory Lahr  (JL9969)
              Attorneys for Plaintiff American International
              Specialty Lines Insurance Company
              125 Broad Street, 39th Floor
              New York, NY  10004-2400
              Telephone: (212) 422-0202
              Facsimile: (212) 422-0925

Case No: 2:09-cv-02628-DDP-SS

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  600 South Indian Hill Boulevard, Claremont, California 91711.

On **August 10, 2009,** I served the foregoing document described as: **FIRST AMENDED CROSS-COMPLAINT AND DEMAND FOR JURY TRIAL** on all interested parties in this action by placing [ ] the original  [ ]a true copy  thereof enclosed in sealed envelopes addressed as follows:

<b>See Attached List</b>

[XX]BY MAIL

   I caused such envelope to be deposited in the mail at Claremont, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date deposit for mailing in affidavit.

[ ]BY PERSONAL SERVICE

   I caused to be delivered by hand to the above-listed addressees or to the addressees on the list attached hereto.  A proof of service executed by the delivery person will be mailed under separate cover.

[ ]BY OVERNIGHT MAIL/COURIER

   To expedite the delivery of the above-named document, said document was sent via overnight courier for next day delivery to the above-listed party.

[ ]BY FACSIMILE ("FAX")

   In addition to the manner of proof of service indicated above, a copy was sent by FAX to the above-listed party.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on **August 10, 2009**, at Claremont, California.

DEBBIE HUNTER

## Service List

Terry D. Avchen, Esq.
Aaron P. Allan, Esq.
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
*Attorneys for Plaintiff, Vintage Petroleum, LLC*

Heather Skinazi, esq.
OCCIDENTAL PETROLEUM CORPORATION
10889 Wilshire Boulevard
Los Angeles, California 90024
Telephone: (310) 443-6127
*Attorneys for Plaintiff, Vintage Petroleum, LLC*

David A. Ring, Esq.
SEDGWICK, DETERT, MORAN & ARNOLD, LLP
801 South Figueroa St., 19th Floor
Los Angeles, California 90017
*Attorneys for Defendant, American International
Specialty Lines Insurance Company*

J. Gregory Lahr, Esq.
SEDGWICK, DETERT, MORAN & ARNOLD, LLP
125 Broad Street, 39th Floor
New York, NY 10004-2400
Telephone: (212) 422-2202
*Attorneys for Defendant, American International
Specialty Lines Insurance Company*

Michael Turrill, Esq.
ARENT FOX, LLP
555 West 5th Street, 48th Floor
Los Angeles, California 90013
Telephone: (213) 443-7535
*Attorneys for Defendant, Greka Oil & Gas, Inc.*

Gregg S. Garrison, Esq.
GARRISON LAW CORPORATION
1525 State Street, Suite 100
Santa Barbara, California 93101
Telephone: (805) 957-1700
*Attorneys for Defendant, Greka Oil & Gas, Inc.*